## PSYCHIC RESEARCH AND DEVELOPMENT INSTITUTE OF MARYLAND, INC. *v.* MABEL GUTBRODT

[No. 1224, September Term, 1979.]

*Decided June 13, 1980.*

The cause was argued before GILBERT, C. J., and MOORE and COUCH, JJ.

*Carl A. Durkee,* with whom were *Clarence M. Thomas* and *Durkee, Thomas & Hahn* on the brief, for appellant.

*Max D. Miller* and *Charles R. Boutin,* with whom were *G. Arnold Pfaffenbach* and *Lentz & Hooper* on the brief, for appellee.

GILBERT, C. J., delivered the opinion of the Court.

## — PROLOGUE —

A corporation is an artificial being having a life span as long as the State permits and being able to do only that which the State allows. The corporation is born in the minds of men, with an attorney usually acting as midwife, and with subsequent legitimization by the State.

Experience *tells* us that a corporation comes into existence when the Articles of Incorporation or Charter, are accepted by the State Department of Assessments and Taxation [1] (Department). The corporation dies when: the Attorney General successfully maintains a civil suit to forfeit the corporate charter on the grounds that the corporation is under the control of a person engaged in organized crime, Corp. Art. § 1-405; it is voluntarily dissolved, Corp. Art. §§ 3-401 — 3-412; twenty-five percent of its stockholders successfully petition a court of equity to dissolve the corporation, Corp. Art. § 3-413 (a); a stockholder's suit is successful in equity on the basis of fraud or that for "a period which includes . . . two consecutive annual meeting dates," the stockholders have failed to elect directors, Corp. Art. § 3-413 (b); a stockholder's or creditor's suit in equity establishes that the corporation is "unable to meet its debts as they mature in the ordinary course of its [(the corporation's)] business," Corp. Art. § 3-413 (c); the Governor issues a proclamation declaring the charter to be repealed,

---

1. Maryland Corporation and Associations Code Ann. (1975) § 1-205.

annulled, and forfeited on the basis that the corporation failed to pay its taxes to the State or to file an annual report with the Department, Corp. Art. § 3-503; the Attorney General successfully maintains a suit in equity on grounds that the corporation abused, misused, or failed to use its powers in a manner that is in the public interest, and the court enters an order declaring the charter forfeited and the corporation dissolved, Corp. Art. § 3-514.

Like the Man from Nazareth, and unlike human beings, a corporation that has "died" as a result of its failure to pay taxes or file an annual report, may be resurrected at any time. The method of breathing new life into a deceased corporate body requires merely the filing of Articles of Revival with the Department. Corp. Art. §§ 3-508 to 3-510, inclusive.

Once the Articles of Revival are accepted by the Department,[2] then "all contracts or other acts done in the name of the corporation while the charter was void are validated," provided the corporation was otherwise empowered to enter into the contracts or to perform the "other acts." Corp. Art. § 3-513 (1). All rights and assets of the corporation, except those that were sold or "otherwise divested" during the time "the charter was void, are restored to the corporation to the same extent they were held ... before the expiration or forfeiture of the charter."

This appeal asks that we reverse a declaratory decree of the Circuit Court for Harford County (Cameron, J.) in which the chancellor held that a bequest to a defunct corporation was void in that the corporation was not "in existence" at the time of the testatrix's demise.

## — THE FACTS —

The Last Will and Testament of Lois G. Hensle, who died on May 30, 1978, provided in "item VI" that Psychic

---

**2.** Corp. Art. § 3-510 mandates that "[a]ll State and local taxes," except real estate taxes, "and all interest and penalties due" must be paid. The "taxes" include those which would have been due had not the charter been forfeited. The Statute of Limitations may not be interposed as a defense against payment of the taxes.

Research and Development Institute of Maryland, Inc., (Psychic) was the residual legatee of her estate, if "in existence at the time of" the testatrix's death. Item VI went on to provide that "should . . . [Psychic] not be in existence" the rest and residue of Ms. Hensle's estate was to go to her mother, Mabel Gutbrodt, if Mabel survived the testatrix.[3]

Psychic's corporate charter was forfeited on July 3, 1974, by Proclamation of the Governor "for failure to file necessary reports and/or pay taxes due thereon."[4] Six days after Ms. Hensle died, Psychic filed Articles of Revival. Corp. Art. § 3-508. Patently, Psychic was without *de jure* corporate status at the time of the testatrix's demise.

On May 16, 1979, Mabel Gutbrodt filed a bill of complaint in the circuit court seeking a declaratory judgment against Psychic and E. Edward Toscani, the personal representative of the estate of Ms. Hensle, in which Mrs. Gutbrodt asserted that she was entitled to the residuary estate, not Psychic. Mrs. Gutbrodt brought the bill because both she and Psychic claim the residuum, and the personal representative refused distribution to either claimant absent a judicial determination as to the proper distributee.

By motion, three months after the filing of the complaint, Bernadene Grosswiler was substituted as the party-plaintiff for Mrs. Gutbrodt, who had died in the interim. Ms. Grosswiler filed a supplemental bill of complaint.

Following discovery, Psychic moved for summary judgment before Judge Cameron. At the conclusion of counsel's exposition, the judge denied Psychic's motion. Simultaneously, the court declared Ms. Grosswiler to be the rightful legatee under the will.

— THE ISSUE —

Obviously the question before us is, was Psychic entitled

---

3. Ms. Hensle also provided for a third alternative legatee in the event Psychic was not in existence and her mother predeceased her. *See,* however, Md. Est. and Trust Code Ann. (1974) § 4-403.

4. Quoted from a certification of annulment and revival issued by the Department on March 29, 1979.

to receive the bequest under Ms. Hensle's will? Underlying that question are two subissues: 1) was Psychic "in existence" at the time of Ms. Hensle's death? 2) does the filing of Articles of Revival, after the death of the testatrix, resurrect *ab initio* Psychic from the dead? For the reasons stated *infra,* we answer the question and both subquestions in the negative.

## — THE LAW —

Corporation Art. § 3-503 (a) provides that, if a corporation fails to file an annual report or to pay its taxes when due, the Comptroller of the Treasury shall certify to the Governor a list of the delinquent corporations. In turn, "the Governor shall issue a proclamation declaring that the charters of the corporations are repealed, annulled, and forfeited, and the *powers conferred by law on the corporations are inoperative, null, and void as of the date of the first publication of the proclamation, without proceedings of any kind either at law or in equity.*" (Emphasis supplied.) Corp. Art. § 3-503 (c). Once the proclamation is issued, "the forfeiture put[s] an end to the corporate existence." *Callahan v. Clemens,* 184 Md. 520, 528, 41 A.2d 473, 476 (1945). The *"organization . . . is not legally in existence* as a corporation and cannot function as a corporation." (Emphasis supplied.) *Atlantic Mill & Lumber Realty Co. v. Keefer,* 179 Md. 496, 499-500, 20 A.2d 178, 180 (1941).

Whatever the law may be elsewhere, in this State a corporation whose charter has been forfeited immediately becomes a non-entity, *Callahan v. Clemens, supra; Atlantic Mill & Lumber Realty Co. v. Keefer, supra,* a lifeless corpus that *may* be "born again" if certain statutory requirements are met. Corp. Art. § 3-508 through § 3-510.

Obviously aware that corporations sometimes wither and die, Ms. Hensle provided for that possibility in her will. She named an alternate beneficiary in the event of Psychic's nonexistence at the time of the testatrix's demise. Indeed, she was even careful to have a second alternate beneficiary.

Here and in the trial court Psychic labors to avoid the plain language of the will. The residuary was to pass to Ms. Gutbrodt "[s]hould Psychic . . . not be in existence at my death." *Callahan v. Clemens, supra,* makes clear that forfeiture brings a halt to corporate existence. Hence, Psychic was not "in existence" at the time Ms. Hensle died.

Psychic points to Corp. Art. § 3-513 (2) which provides that upon revival of the corporate existence "[a]ll the assets and rights of the corporation, *except those sold or those of which it was otherwise divested while the charter was void,* are restored to the corporation to the same extent that they were held by the corporation before the expiration or forfeiture of the charter." (Emphasis supplied.) Psychic asserts that the statute "restores to the corporation all assets and rights upon revival and treats the revived corporation as having been in continuous existence during forfeiture." We have a different view.

In *Cloverfields Improvement Association, Inc. v. Seabreeze Properties, Inc.,* 32 Md. App. 421, 362 A.2d 675 (1976), *aff'd,* 280 Md. 382, 373 A.2d 935 (1977), we were faced with an analogous situation. There, a corporation, whose charter had been forfeited, purported to assign certain property to Cloverfields. Subsequently, the directors of the defunct corporation, acting as trustees, *see* Corp. Art. § 3-516 (1975, 1979 Cum. Supp.), conveyed the same property to Seabreeze. Cloverfields averred that, notwithstanding the defect in the conveyance to it, revival of the corporate charter validated the assignment *ab initio.* Cloverfields relied upon the predecessor of Corp. Art. § 3-513 (2). We rejected that argument, stating: "We think former [Md. Ann. Code art. 23,] § 85 (d) to be clear and unambiguous in that the revived corporation may only take title to those assets which were legally not disposed of during the period of corporate demise." 32 Md. App. at 434, 362 A.2d at 684.

Unsatisfied with our decision, Cloverfields sought and obtained a writ of *certiorari,* to the Court of Appeals.

Following a scholarly analysis of the forfeiture provisions, Judge Smith, speaking for the Court said:

"We agree with the conclusion of the Court of Special Appeals:

'We think former § 85 (d) to be clear and unambiguous in that the revived corporation may only take title to those assets which were legally not disposed of during the period of corporate demise. Inasmuch as the surviving trustees had, in 1971, validly conveyed and assigned the very property [Cloverfields] thought it had acquired in 1965, the total effect of the revival in this case is naught. The act of revival cannot divest a *bona fide* purchaser of his title.' *Id.* 32 Md. App. at 434-35.

*Cf. Redwood Hotel, Inc. v. Korbien,* 197 Md. 514, 80 A.2d 28 (1951). In that case intervening rights did not exist as here. The holding there was consistent with that in *J.B. Wolfe, Inc. v. Salkind,* 2 N.J. 312, 70 A.2d 72 (1949), where Chief Justice Vanderbilt said that the objects of statutes such as ours are solely the raising of revenue for the State, the police aspects being covered by a provision (similar to ours) making it unlawful to 'exercise or attempt to exercise any powers under the charter of any such corporation after such proclamation shall have issued,' and refers to cases 'uniformly holding that a reinstatement of a repealed charter relates back to the date of the proclamation of repealer and validates corporate action taken in the interim.' *Our statute validates such action, but not where other rights have intervened because it states specifically that the property and rights of which the corporation has been divested prior to its revival are not vested again in the corporation.* To hold otherwise would be to fail to heed the rules of statutory construction." (Emphasis supplied.) 280 Md. at 398, 373 A.2d at 943.

*Cloverfields* is dispositive of the instant case. Psychic was not "in existence" at the time of Ms. Hensle's death with the result that the alternate bequest to Mrs. Gutbrodt became operative.

The Articles of Revival can spontaneously generate life in a dead corporation, but they cannot restore to it rights that passed to others during the period of the corporate abiosis. The subsequent revival of Psychic did not again vest property and rights in the corporation which were divested during the period of forfeiture. We hold that the intervening right of Mrs. Gutbrodt takes precedence over the claim of Psychic. Judge Cameron correctly declared Mrs. Gutbrodt's estate to be the rightful legatee under the residuary clause of Ms. Hensle's will.

*Decree affirmed.*
*Costs to be paid by the appellant.*