703 A.2d 1287

**KROOP & KURLAND, P.A., et al.**

v.

**Michael J. LAMBROS, Personal Representative of the Estate of Nellie B. Widener.**

No. 283, Sept. Term, 1997.

Court of Special Appeals of Maryland.

Jan. 6, 1998.

652

M. Gordon Tayback, Baltimore, for appellants.

Paul J. Feeley, Towson, for appellee.

Argued before WENNER, SONNER and BYRNES, JJ.

BYRNES, Judge.

This case raises the question whether the revival of a corporation whose charter was forfeited validates its previously ineffective notice to renew a judgment, filed before the judgment's twelve-year expiration date, thereby restoring the judgment to the corporation after the twelve-year expiration date. We hold that expiration of the judgment during the period of corporate non-existence divests the corporation of a right, within the meaning of Section 3–512(2) of the Corporations and Associations Article, so that the right cannot be restored by corporate revival.

## FACTS

On September 23, 1983, Nellie B. Widener executed a confessed judgment note for $15,000.00, payable to the law firm of Kroop & Kurland, P.A.("K & K"). Two weeks later, K & K instituted an action for judgment by confession against Ms. Widener, in the Circuit Court for Baltimore County. Ms. Widener resided in Baltimore County and owned real property situated on York Road, in Sparks. On October 3, 1983, judgment by confession for $15,000.00 plus court costs was entered in favor of K & K. The judgment was duly indexed and recorded.

In 1983, when it obtained the confessed judgment against Ms. Widener, K & K was a Professional Association, incorporated in the State of Maryland. On October 8, 1985, the State Department of Assessments and Taxation forfeited K & K's

corporate charter, for failure to file the necessary corporate personal property report and to pay certain late fees.[1]

Several years elapsed. On December 8, 1994, K & K filed a notice to renew the judgment against Ms. Widener, pursuant to Md. Rule 2–625. The notice was signed by Kenneth D. Man, Esquire and "Kroop & Kurland." On December 31, 1994, K & K purportedly was dissolved, under the terms of a voluntary dissolution agreement that called for the accounts receivable and assets of K & K to be transferred to Ronald I. Kurland, P.A.

In 1995, Ms. Widener died. An estate was opened in the Orphans' Court for Baltimore County. On November 1, 1995, Ronald I. Kurland, Esquire and Ronald I. Kurland, P.A. filed a claim for $15,000.00 against the Widener estate and an accompanying petition for allowance for $15,000.00, pursuant to Md. Rule 6–413. They cited the October 3, 1983 confessed judgment against Ms. Widener in favor of K & K as the basis for their claim and explained that they had become the owners of the assets of Kurland & Kurland, P.A., including the Widener judgment, as of December 31, 1994.

On December 11, 1995, appellee Michael J. Lambros, Personal Representative of the Widener estate, notified Mr. Kurland and his P.A. that their claim was disallowed. Five months later, on May 9, 1996, the State Department of Assessments and Taxation received and approved articles of revival, by which K & K's corporate charter was reinstated. Thereafter, the Orphans' Court conducted a hearing on Mr. Kurland's and the Kurland P.A.'s petition for allowance and, on June 12, 1996, granted it, in the amount of $15,000.00. On June 26, 1996, the Personal Representative appealed the decision of the Orphans' Court to the Circuit Court for Baltimore County, pursuant to Md.Code (1995 Repl.Vol.), § 12–502 of the Cts. & Jud. Proc. Article ("C.J.").

---

1. The parties stipulated below that the officers and directors of K & K did not know that its charter had been forfeited until April, 1996.

On January 14, 1997, the case was called for a *de novo* hearing before the circuit court. The parties proceeded on stipulated facts and agreed exhibits. On February 5, 1997, the court issued an Amended Memorandum Opinion reversing the Orphans' Court's allowance of the claim of Mr. Kurland and the Kurland, P.A. against the Widener estate.[2] A timely appeal was noted, presenting the following question for review, which we have rephrased:

I. Did the circuit court err in ruling that the notice of renewal of judgment filed by Kroop & Kurland, P.A. was null and void and was not cured by the later revival of its corporate charter?

We answer the question posed in the negative, and affirm the judgment of the circuit court.[3]

## DISCUSSION

### *Standard of Review*

In an action tried before a court without a jury, we review the case on both the law and the evidence. Md. Rule 8–131(c). The lower court's findings of fact will not be set aside unless they are clearly erroneous. In this case, the facts were stipulated and undisputed. The "clearly erroneous" standard does not apply to appellate review of a question of law. *Bagley v. Bagley*, 98 Md.App. 18, 34, 632 A.2d 229 (1993), *cert. denied*, 334 Md. 18, 637 A.2d 1191 (1994). Review of a purely legal issue, such as the one before us, is "expansive." *In re Michael G.*, 107 Md.App. 257, 265, 667 A.2d 956 (1995).

---

**2.** On January 27, 1997, the court issued a Memorandum Opinion that is identical in all substantive respects to its February 5, 1997 Amended Memorandum Opinion, except that it concluded by affirming the Orphans' Court's ruling, not reversing it. That mistake was corrected in the Amended Memorandum Opinion.

**3.** The circuit court record shows the plaintiffs in the case before it to be Ronald I. Kurland, Esquire and Ronald I. Kurland, P.A. The court's Amended Memorandum Opinion is captioned "Kroop & Kurland, P.A., et al. v. Michael J. Lambros," however, and the notice of appeal to this Court was filed by "the plaintiff, Kroop & Kurland, P.A., et al."

## Analysis

### i

▉ A circuit court money judgment expires twelve years from its date of entry or twelve years from the date on which it was most recently renewed. Md. Rule 2–625. A notice of renewal may be filed by the judgment holder at any time before the expiration of the judgment. *Id.* K & K's confessed judgment against Ms. Widener was a money judgment that, unless renewed, expired automatically on October 3, 1995, twelve years after it was entered and one month before attorney Kurland and his P.A. lodged their claim against Ms. Widener's estate.

▉ When a corporation's charter is forfeited for nonpayment of taxes or failure to file an annual report, the corporation is dissolved by operation of law and ceases to exist as a legal entity. *Atlantic Mill & Lumber Realty Co. v. Keefer,* 179 Md. 496, 499–500, 20 A.2d 178 (1941); *Patten v. Board of Liquor License Com'rs for Baltimore City,* 107 Md.App. 224, 233–34, 667 A.2d 940 (1995); *Scott v. Seek Lane Venture, Inc.,* 91 Md.App. 668, 685–86, 605 A.2d 942, *cert. denied,* 327 Md. 626, 612 A.2d 257 (1992); *Cloverfields Improvement Assoc., Inc. v. Seabreeze Properties, Inc.,* 32 Md. App. 421, 424–26, 362 A.2d 675, *modified in part and aff'd,* 280 Md. 382, 373 A.2d 935 (1977); Md.Code (1993 Repl.Vol., 1997 Cum.Supp.), § 3–503(d) of the Corps. & Ass'ns. Article ("C.A.").[4] Until a court appoints a receiver, the directors of a corporation whose charter is forfeit function as trustees of the corporation's assets, for purposes of "winding up," and may exercise enumerated general and specific powers to that end.

---

4. Section 3–503(d) provides:

 After the lists [of Maryland corporations that have not filed annual reports or have not paid taxes] are certified, the Department [of Assessments and Taxation] shall issue a proclamation declaring that the charters of the corporations are repealed, annulled, and forfeited, and the powers conferred by law on the corporations are inoperative, null, and void as of the date of the proclamation, without proceedings of any kind either at law or in equity.

C.A. § 3–515; *Patten*, 107 Md.App. at 234, 667 A.2d 940. As we stated in *Cloverfields:*

'[t]he forfeiture for non-payment of taxes puts an end to the corporate existence, and the rights of creditors become fixed at that time. The corporate assets are automatically transferred to the directors, as trustees, for use of the creditors and stockholders or members, and are held by such trustees until revival of the charter of the corporation.'

32 Md.App. at 424–25, 362 A.2d 675, *(quoting* H. Brune, *Maryland Corporation Law and Practice,* § 406 (Rev. Ed.1953 & Supp.)); *American–Stewart Distillery, Inc. v. Stewart Distilling Company,* 168 Md. 212, 220, 177 A. 473 (1935).

■ The charter of a corporation that is forfeited for non-payment of taxes and failure to file an annual report may be revived, and the corporation brought back into existence, under C.A. §§ 3–507, 3–508, and 3–509, by the filing of articles of revival. Section 3–512 provides that reinstatement of a corporation's existence through articles of revival has the following effects:

(1) If otherwise done within the scope of its charter, all contracts or other acts done in the name of the corporation while the charter was void are validated, and the corporation is liable for them;

(2) All the assets and rights of the corporation, **except those sold or those of which it was otherwise divested while the charter was void,** are restored to the corporation to the same extent that they were held by the corporation before the expiration or forfeiture of the charter.

(emphasis supplied).

### ii

Appellants do not dispute that K & K's December 8, 1994 attempt to renew its confessed judgment against Ms. Widener was ineffective at the time that it was undertaken. They acknowledge that, by virtue of the forfeiture of its charter, K & K had been rendered a legal non-entity, without capacity to

take any legal action, including the filing of a notice to renew judgment. Moreover, appellants do not contend that the December 8, 1994 notice to renew judgment, signed by Mr. Man on behalf of "Kroop and Kurland," was filed by a director of K & K, as trustee of the defunct corporation, a proposition plainly not supported by the evidence.

Appellants' assertion that K & K's October 3, 1983 judgment against Ms. Widener gives rise to a viable claim against the Widener estate is premised entirely upon K & K's 1996 corporate revival, and the effect that they contend the revival had on the judgment that had been entered more than twelve years before. Appellants maintain that, under C.A. § 3–512(2), K & K's corporate revival retroactively validated the December 8, 1994 notice to renew judgment, thereby restoring to it the judgment against Ms. Widener. They assert that the passage of more than twelve years from the date of the entry of the judgment to the date of the revival of K & K's charter did not "divest" K & K of the judgment against Ms. Widener, because a right that has expired has not been divested, within the meaning of C.A. § 3–512(2).

*Cloverfields Imp. Ass'n, Inc. v. Seabreeze Properties, Inc.*, 280 Md. 382, 373 A.2d 935 (1977), upon which appellants place primary reliance, is one of the earliest cases to address the meaning of the word "divested," as it was used in the statutory predecessor to C.A. § 3–512(2).[5] In that case, Guaranteed Realty Corporation held title to land in a residential development in Queen Anne's County. The State forfeited Guaranteed's corporate charter, for failure to file an annual report and for non-payment of taxes. Thereafter, in 1965, the directors and officers of Guaranteed executed instruments assigning certain rights of Guaranteed respecting the develop-

---

**5.** The statute then in effect, Md. Ann.Code 1957, Art. 23 § 85(d), provided, in pertinent part:

All real and personal property, rights and credits of the corporation of the time its charter became void and of which it was not divested prior to such revival shall be vested in the corporation, after such revival, as fully as they were held by the corporation at the time its charter became void.

ment and conveying certain property in the development to Cloverfields Improvement Association. Six years later, in 1971, the surviving directors of Guaranteed, acting expressly as its "trustees," assigned the same rights and conveyed the same property to Seabreeze Properties, Inc. Cloverfields filed a declaratory judgment action, seeking determination of the ownership of the various interests that had been twice assigned and conveyed. After suit was filed, Guaranteed filed articles of revival.

The chancellor found that the rights and assets at issue were validly held by Seabreeze, not by Cloverfields. This Court affirmed, 32 Md.App. 421, 362 A.2d 675 (1976), and the Court of Appeals granted certiorari. In an opinion written by Judge Smith, the Court of Appeals affirmed, holding that the revival of Guaranteed's charter did not validate the 1965 transaction. The Court reasoned that the 1965 assignment/conveyance by Guaranteed to Cloverfields was ineffective, as Guaranteed had been without legal existence when it engaged in the transaction; the 1971 assignment/conveyance to Seabreeze was effective, however, because it had been carried out by Guaranteed's directors, in their capacities as trustees, during the period of corporate non-existence. The subsequent revival of Guaranteed did not "breathe life" into the 1965 transaction with Cloverfields, under the Corporations and Associations Article, because the valid assignment and conveyance by Guaranteed to Seabreeze had "divested" Guaranteed of the same rights and assets, within the meaning of the predecessor statute to C.A. § 3–512(2), before it was revived. The Court explained:

> We agree with the conclusion of the Court of Special Appeals:
>
> 'We think former § 85(d) to be clear and unambiguous in that the revived corporation may only take title to those assets which were legally not disposed of during the period of corporate demise. Inasmuch as the surviving trustees had, in 1971, validly conveyed and assigned the very property (Cloverfields) thought it had acquired in 1965, the total

effect of the revival in this case is naught. The act of revival cannot divest a bona fide purchaser of his title.' 280 Md. at 398, 373 A.2d 935 (*quoting* 32 Md.App. at 434–35, 362 A.2d 675). Contrasting its holding with that in *Redwood Hotel, Inc. v. Korbien,* 197 Md. 514, 80 A.2d 28 (1951), in which the noting of an appeal by a defunct corporation was held to have been validated by the subsequent revival of the corporation, the Court commented, "[i]n that case intervening rights did not exist as here." *Id.*

Appellants argue that *Cloverfields* establishes that an asset is not "divested," within the meaning of C.A. § 3–512(2), unless it has been transferred to a third party or, in some fashion, "intervening rights exist." In further support of that position, they cite *Psychic Research and Development Institute of Maryland, Inc. v. Gutbrodt,* 46 Md.App. 21, 415 A.2d 611 (1980). There, a corporation was named residual legatee of an estate, on the condition that it be "in existence" when the testatrix died. The testatrix named an alternate beneficiary, who would take in the event that the corporation was not in existence when death occurred.

When the testatrix died, the corporation was not "in existence," as its charter had been forfeited for nonpayment of taxes and failure to file necessary reports. Six days after the testatrix's death, the corporation filed articles of revival. The alternate beneficiary initiated a declaratory judgment action against the corporation, asserting that she, not it, was entitled to the residuary estate. The chancellor ruled in her favor. We affirmed, holding that, under C.A. § 3–512(2),[6] revival of the corporation after the testatrix's death did not restore to it the right to take under the will, which had passed to the alternate beneficiary:

The Articles of Revival can spontaneously generate life in a dead corporation, but they cannot restore to it rights that

---

6. When *Psychic Research and Development Institute of Maryland, Inc. v. Gutbrodt* was decided, the language that now appears at C.A. § 3–512(2) was codified at C.A. § 3–513(2). Section 2, ch. 593, Acts 1986 redesignated former C.A. § 3–513 to the present C.A. § 3–512.

passed to others during the period of corporate abiosis. The subsequent revival of [the corporation named in the will] did not again vest property and rights in the corporation which were divested during the period of forfeiture.

46 Md.App. at 28, 415 A.2d 611.

In*Cloverfields* and *Psychic Research,* a right or asset was "otherwise divested" when a person or entity acted to transfer it to another. In *Messall v. Merlands Club,* 244 Md. 18, 34–35, 222 A.2d 627 (1966), *cert. denied,* 386 U.S. 1009, 87 S.Ct. 1349, 18 L.Ed.2d 435 (1967), the court held that devolution of a defunct corporation's asset, by operation of law, to its directors, divested the corporation of rights associated with that asset; neither the asset nor the associated right was restored upon revival of the corporation. In that case, a corporation rented premises under a lease, which contained a purchase option. The lease also provided that the tenant would be in default if the lease devolved, by operation of law, upon any person other than the tenant. After the corporation's charter was forfeited by the State for failure to pay taxes, it attempted to exercise the purchase option. The Court affirmed a lower court finding that the lease had devolved upon the directors of the corporation, by operation of law, under the predecessor statute to C.A. § 3–515, thereby effecting a default by the corporation; and that the subsequent reinstatement of the corporation by articles of revival did not retroactively cure the default. The later revival of the corporation could not restore to it a right that had devolved upon others, during the period of corporate non-existence.

In *U.S. v. Firemen's Ins. Co. of Newark, N.J.,* 869 F.Supp. 347 (D.Md.1994)(Messitte, J.), the court considered the question whether expiration of a cause of action by the passage of a limitations period constituted the divestiture of a right, within the meaning of C.A. § 3–512(2).[7] The defendant filed a

---

**7.** The court in *U.S. v. Firemen's Ins. Co. of Newark, N.J.* actually referenced § 3–513(2), as cited in the *Psychic Research* case, even though that section had been recodified at C.A. § 3–512(2).

motion to dismiss the corporate plaintiff's Miller Act claim,[8] for lack of capacity to sue, on the ground that its charter was forfeit. The court granted the plaintiff leave to file articles of revival, which it did. By the time that the corporation was reinstated, however, the one year limitations period for the Miller Act claim had expired. The defendant amended its motion to dismiss, asserting that the claim was time-barred. In opposition, the plaintiff argued that revival of its charter had validated its initial, timely filing of the Miller Act claim, even though revival occurred after the limitations period had expired.

The court disagreed. It distinguished the case before it, in which limitations had run during the period of corporate non-existence, from those holding that, under C.A. § 3–512(2), the filing of articles of revival restore to a corporation the capacity to sue. *See Chrysler Credit Corporation v. Superior Dodge, Inc.*, 538 F.2d 616 (4th Cir.1976), *cert. denied,* 429 U.S. 1042, 97 S.Ct. 743, 50 L.Ed.2d 754 (1977); *Redwood Hotel, Inc. v. Korbien, supra.* The court held that the expiration of limitations on the Miller Act claim divested the corporation of its cause of action, by operation of law, and that revival of the corporation could not restore such a divested right. It viewed the expiration of the plaintiff's claim as creating a correlative right in the defendant to be free of the claim:

> The [court ... ] perceives no material difference between inheritance rights that vest in an alternate beneficiary when a corporate beneficiary's charter is forfeit and the right of a defendant to claim the benefit of a limitations defense that accrues while a corporation's charter is in similar status. In the terminology of Section [3–512(2) ... the plaintiff] was 'divested' of the right to continue the suit during the time its

8. *See* 40 U.S.C.A. § 270b(b)(1986).

charter was inoperative. The right was not revested when the corporation revived.

*Id.* at 349.

### iii

 The right that appellants assert was restored to K & K by its 1996 revival is the right attendant to a money judgment. In Maryland, a properly indexed and recorded money judgment is a lien against real property of the judgment debtor located in the county in which the judgment was rendered. C.J. § 11–402; Md. Rule 2–621; *Back v. Internal Revenue Service,* 51 Md.App. 681, 687, 445 A.2d 1057, *cert. denied,* 294 Md. 542 (1982). A judgment by confession is a money judgment that "operates as a lien against the real property of the defendant located in the county in which the judgment is entered." *Schlossberg v. Citizens Bank of Maryland,* 341 Md. 650, 655, 672 A.2d 625 (1996). A judgment lien is a general lien on real property signifying the right of the judgment creditor to order the sale of all or part of the debtor's property to satisfy the judgment. *McHugh v. Martin,* 198 Md. 173, 177, 81 A.2d 623 (1951); *Lee v. Keech,* 151 Md. 34, 36–37, 133 A. 835 (1926); *Back v. Internal Revenue Service, supra,* at 693, 445 A.2d 1057. A judgment creditor does not have a property right in the land of the judgment debtor; however, the creditor does have a vested interest in the property in the nature of a remedy, *i.e.,* the right to levy on the land. *Van Royen v. Lacey,* 262 Md. 94, 99–100, 277 A.2d 13 (1971); *Lee v. Keech, supra,* at 37, 133 A. 835. Likewise, issuance of a writ of execution gives the judgment creditor the right to sell the personal assets of the judgment debtor to satisfy the judgment.

Under former Md. Rule 624, the predecessor to Md. Rule 2–625, and the Maryland BT Rules, which were repealed in 1984, a judgment creditor was entitled to the issuance of a writ of *scire facias,* within twelve years of the entry of the judgment, to renew his judgment. *See O'Neill and Company v. Schulze,* 177 Md. 64, 67–8, 7 A.2d 263 (1939). The writ was required to be served on the judgment debtor, who was entitled to re-

spond. Expiration of the judgment due to the passage of twelve years had to be pleaded as an affirmative limitations defense by the judgment debtor. Thus, it was possible for the judgment to be renewed, even if more than twelve years had passed since its entry, if the judgment debtor did not object to renewal, by raising limitations. *See* Paul V. Niemeyer & Linda M. Schuett, *Maryland Rules Commentary,* 485–86 (2d ed.1992). With the advent of Rule 2–625, that changed:

> Under [the new rule] a money judgment automatically expires after twelve years from its date of entry. At any time before it expires, the judgment holder can extend it or renew it by filing a simple notice of renewal. The clerk must enter the renewal on the judgment docket and should refer to the original judgment date so as to put the public on notice for purposes of priorities of liens. The judgment thereby becomes enforceable for another twelve years. There is no limitation on the number of renewals that may be obtained.
>
> If a notice of renewal is filed after the expiration of the twelve-year period, a judgment no longer exists to be renewed, and the clerk does not, in fact, renew the judgment.

*Niemeyer, supra* at 486.

■■■ In this case, K & K's judgment against Ms. Widener was a lien on her real property in Baltimore County, and, until it expired, constituted a right of K & K to sell the property in payment of the judgment. Like the corporate tenant in *Messall,* which, by operation of law, lost its option right under a lease, K & K lost its right to sell Ms. Widener's real property in satisfaction of its judgment, by operation of law, when the judgment expired, twelve years after its entry, thus extinguishing the judgment lien on Ms. Widener's property.

Appellants argue that, under the holdings in *Cloverfields, Psychic Research, and Messall,* a corporation only is "divested" of a right or asset, within the meaning of C.A. § 3–512(2), if that right or asset devolves upon, is transferred to, or in some way comes to belong to another person or entity, during the period of corporate non-existence. They reason that

revival of a corporation will not restore a right or asset that has been so divested, as to do so would interfere with the intervening rights of innocent third parties; if a right or asset merely expires, however, without affecting "intervening rights" of others, it is not divested and will be restored by corporate revival. Appellants maintain that K & K's judgment against Ms. Widener simply expired, without giving rise to intervening rights, and, as such, it was not divested, and must be restored, under C.A. § 3–512(2). We disagree.

As the Court of Appeals observed in *Cloverfields*, in construing the meaning of the substantively identical statutory predecessor to C.A. § 3–512(2): " 'Statutes should be interpreted according to the most natural and obvious import of their language, without resorting to subtle or forced construction, for the purpose of either limiting or extending their operation.' " 280 Md. at 397, 373 A.2d 935 *(quoting Howell v. State,* 278 Md. 389, 393, 364 A.2d 797 (1976)). The *Black's Law Dictionary* definition of the word "divest" that K & K furnishes in support of its argument is simple and straightforward; it also undercuts its position in this case. *Black's* defines "divest," by reference to "devest," to mean: "to deprive; to take away; to withdraw." This definition neither incorporates nor depends upon the concept of continued existence. While appellants correctly assert that the rights and assets at issue in *Cloverfields, Psychic Research,* and *Messall* not only were lost to the corporations that had them but also continued to exist and became the rights and assets of others, those cases do not limit the meaning of the phrase "otherwise divested," in C.A. § 3–512(2), to like situations. One who loses a right by operation of law is divested of that right, within the plain meaning of that word, irrespective of whether the right comes to exist in another or ceases to exist at all.

Moreover, even applying to the facts of this case the narrow connotation of "divest" that appellants argue has been engrafted upon C.A. § 3–512(2) by the case law, we hold that K & K was "divested" of its judgment against Ms. Widener twelve years after the judgment was entered. We agree with Judge Messitte's observation, in *Firemen's Ins. Co. of Newark, N.J.,*

*supra,* that a right lost to one may give rise to a correlative right in another. In this case, the existence *vel non* of K & K's judgment determines the validity of the claim of attorney Kurland and the Kurland, P.A. against the Widener estate; the validity of that claim in turn determines the distribution of assets in the estate to the legatees under Ms. Widener's will. Although the expiration of K & K's confessed judgment after twelve years did not confer upon or create in others intervening rights in the judgment itself, it directly affected the rights of others in real property against which the judgment had been a lien and in personal property against which the judgment could have constituted a lien, had a writ of execution been issued, pursuant to Md. Rule 2–641.

The expiration of K & K's judgment against Ms. Widener and the concomitant loss of the judgment lien against her real property not only deprived K & K of the right to sell that real property in satisfaction of the debt that gave rise to the judgment but also disencumbered the property, to the benefit of Ms. Widener's legatees. No principled distinction can be drawn between the impact of the expiration of K & K's judgment on Ms. Widener's legatees in this case and the impact of the corporate legatee's non-existence on the alternate beneficiary in *Psychic Research and Development Institute of Maryland, Inc. v. Gutbrodt, supra.* Accordingly, we hold that, during the period in which K & K was defunct, it was divested of its right as a judgment creditor of Ms. Widener, by expiration of the judgment; under C.A. § 3–512(2), that right could not be restored to K & K, upon revival of the corporation.[9]

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

---

**9.** We do not address the out-of-state cases cited by appellants in their brief, as none of them concern statutes similar to C.A. § 3–512(2).