751 A.2d 504

**Charles F. STEIN, III, et ux.**

**v.**

**Robert E. SMITH, Jr., d/b/a Curtis Contractors, Inc.**

**No. 101, Sept. Term, 1999.**

Court of Appeals of Maryland.

May 15, 2000.

Edward J. Gilliss (Edward U. Lee, III, Royston, Mueller, McLean & Reid, LLP, on brief), Towson, for petitioners.

J. Marks Moore, III (West & Moore, LLC, and Andrew M. Winick, Wilson, Elsner, Moskowitz, Edelman & Dicker, LLP, on brief), Baltimore, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, RAKER, WILNER, CATHELL and HARRELL, JJ.

RODOWSKY, Judge.

In this case we hold that the statute of limitations is not tolled by the filing of an action in the name of a corporation whose charter had been forfeited and never revived, asserting a claim that was not a corporate asset at the time of forfeiture. Consequently, an amendment naming the last and sole owner as plaintiff in lieu of the defunct corporation, after the statute had run, does not relate back to when the action was instituted.

This action was instituted on May 7, 1997, in the Circuit Court for Anne Arundel County. The complaint named Curtis Contractors, Inc. as the sole plaintiff. The petitioners,

Charles and Ann Stein (the Steins), were named as defendants. The complaint was pled in two counts. The first count alleged an express written contract between Curtis Contractors, Inc. and the Steins for the construction by Curtis Contractors, Inc. on the Steins' property of a therapy spa and related work. It further alleged amendments to that contract for the purpose of including additional work, and it sought judgment for the unpaid balance of the agreed price. Count II sounded in *quantum meruit* and sought the reasonable value of the work done and materials provided by Curtis Contractors, Inc. for the Steins.

The work was completed no later than May 29, 1994.[1] Consequently, the instant action was filed just short of three years after the cause of action accrued.

The Steins, who were not served until February 1998, moved to dismiss, asserting, *inter alia,* the lack of capacity of Curtis Contractors, Inc. to sue. In an accompanying memorandum, to which a certificate from the State Department of Assessments and Taxation (the Department) was attached as an exhibit, the Steins demonstrated that the charter of Curtis Contractors, Inc. had been forfeited on October 6, 1983, "for failure to file the necessary corporate personal property report or failure to pay any late filing penalties due."

The response to this defense was the filing on April 20, 1998, of an amended complaint which omitted Curtis Contractors, Inc. as plaintiff and named "Robert E. Smith, Jr. d/b/a [doing business as] Curtis Contractors, Inc." as sole plaintiff. It alleged that the respondent, Robert E. Smith, Jr. (Smith), was the sole owner, operator, proprietor, and principal of Curtis Contractors, Inc., and that, following the corporate charter's forfeiture in 1983, Smith had "continued to do busi-

---

1. This case was decided on summary judgment. The date of completion is found in the record only in an unsworn memorandum of law filed by the Steins which states that the plaintiff (then Robert E. Smith, Jr.) asserts that the work was completed no later than May 29, 1994. The plaintiff has never challenged this statement and the completion date has been treated as a conceded fact in the circuit court, in the Court of Special Appeals, and in this Court.

ness as a sole proprietor using the name Curtis Contractors, Inc."

The Steins moved for summary judgment, contending that the statute of limitations had run against Smith's claim. Smith's affidavit in opposition affirmed the facts alleged in the amended complaint that are recited above. Smith also made affirmation to the following:

"I have known Defendants Charles and Ann Stein on a personal basis since 1983. In addition, Charles Stein represented me as an attorney in various matters from 1984 to 1994. Charles Stein was and is intimately familiar with many of my business dealings including my construction business. Charles Stein was at all relevant times fully aware that I was the sole owner, proprietor and principal of Curtis Contractors, Inc."

The circuit court entered summary judgment in favor of the Steins, finding that the claims were barred by the three year statute of limitations provided by Maryland Code (1974, 1995 Repl.Vol.), § 5–101 of the Courts and Judicial Proceedings Article.

Smith appealed to the Court of Special Appeals where the judgment was reversed by a divided court in an unreported opinion. That court agreed with the Steins that "Curtis Contractors, Inc." lacked the capacity to recover against them for breach of contract. That did "not resolve, however, whether the relation back doctrine applies to Smith's amended complaint." The court said, "Although relation back cases generally concern a change in the cause of action or a party defendant, it is only the plaintiff in this case, not the defendant or the claim, that has changed. Nevertheless, we believe the underlying principles remain the same."

Relying principally on *Zappone v. Liberty Life Insurance Co.*, 349 Md. 45, 706 A.2d 1060 (1998), the Court of Special Appeals said that "prejudice to the opposing party is a hallmark of relation back cases involving the substitution of a defendant due to misnomer." The court reasoned that there was no prejudice to the Steins because the facts out of which

the dispute had arisen had not changed, the legal theories of liability had not changed, and the Steins had a personal and professional relationship with Smith. The court analyzed that there had been a "substitution of Smith's name for that of the Corporation in the First Amended Complaint." This, said the court, "is indistinguishable from any other case in which a plaintiff substitutes one party for another, after realizing that the original complaint named the wrong entity."

The dissenting judge believed that Maryland Rule 2–341(c)(5) controlled because the case presented a nonjoinder, as opposed to a misnomer. Rule 2–341(c) in relevant part provides:

"An amendment may seek to ... (4) correct misnomer of a party, (5) correct misjoinder or nonjoinder of a party so long as one of the original plaintiffs and one of the original defendants remain as parties to the action."

The dissenting judge was "not prepared to ignore the traditional understanding that Curtis Contractors[, Inc.] was a separate legal entity from [Smith] and to reward [Smith] for his blatant disregard of applicable corporate law except when it is to his advantage to do otherwise."

■ The Steins petitioned for the writ of certiorari which we granted. *Curtis Contractors, Inc. v. Stein*, 356 Md. 494, 740 A.2d 612 (1999). We shall reverse. Because the original complaint was filed by a nonentity and was a nullity, there was nothing to which the amended complaint could relate back.

The provisions of the Maryland corporation statutes dealing with the forfeiture of charters came into the law, initially by Chapter 244 of the Acts of 1890, "as a tax measure." *Cloverfields Improvement Ass'n v. Seabreeze Props., Inc.*, 280 Md. 382, 387, 373 A.2d 935, 938 (1977). In 1983, when the charter of Curtis Contractors, Inc. was forfeited, the grounds for forfeiture were stated in Maryland Code (1975), § 3–503 of the Corporations and Associations Article (CA). It provided, except as to a tax collectable locally, that the Comptroller "shall certify to the Governor a list of every Maryland corporation which has not paid a tax due by it before October 1 of the year

after the tax became due." CA § 3–503(a)(1). Further, it provided that the Department "shall certify to the Governor a list of every Maryland corporation which has not filed an annual report with the Department as required by law or has not paid franchise or gross receipt taxes before October 1 of the year after the report was required to be filed or the taxes were due." CA § 3–503(b). Currently, the certification is made by the Comptroller to the Department. Md.Code (1957, 1993 Repl.Vol.), CA § 3–503(a)(1).[2] Since 1983 there has been no change of substance relevant to the instant matter with respect to the duties of the Department. *See* CA § 3–503(c).[3]

In 1983 the effect of forfeiture was set forth in Md.Code (1975), CA § 3–503(c). It read:

"When he receives the lists, the Governor shall issue a proclamation declaring that the charters of the corporations are repealed, annulled, and forfeited, *and the powers conferred by law on the corporations are inoperative, null, and void* as of the date of the first publication of the proclamation, without proceedings of any kind either at law or in equity."

(Emphasis added).[4] One of the powers of Curtis Contractors, Inc. that became "inoperative, null, and void" upon forfeiture of its charter was the power to sue. CA § 2–103(2).

Upon forfeiture, and "until a court appoints a receiver, the directors of the corporation become the trustees of its assets for purposes of liquidation." CA § 3–515(a). During that

---

**2.** Hereafter, unless otherwise noted, all references to the Corporations and Associations Article will be to the 1993 Replacement Volume.

**3.** CA § 3–503 was amended by Chapter 593 of the Acts of 1986 to change the duty of the Comptroller from reporting to the Governor to reporting to the Department and by Chapter 8 of the Acts of 1991 to place a duty to report to the Department on the appropriate cabinet secretary with respect to unemployment insurance contributions or reimbursement payments. *See* Md.Code (1993, 1999 Cum.Supp.), CA § 3–503(a) and (b).

**4.** Currently the Department issues the proclamation after the lists are certified. CA § 3–503(d).

period the directors-trustees may "[s]ue or be sued in their own names as trustees or in the name of the corporation." CA § 3–515(c)(3). This latter provision is not applicable in the case before us. Any contract or restitutionary rights that arose in favor of Smith, who allegedly conferred a benefit on the Steins, arose long after forfeiture of the Curtis Contractors, Inc. charter and was not an asset of that corporation at the time of forfeiture.

Filing of articles of revival is the procedure for reinstating a forfeited corporate charter. CA §§ 3–507 through 3–512. From the time of forfeiture until October 1, 1991, in order for Curtis Contractors, Inc. to have articles of revival accepted by the Department, it was necessary for Smith to file all annual reports and to pay "[a]ll State and local taxes, except taxes on real estate, and all interest and penalties due ... whether or not barred by limitations." Md.Code (1975), CA § 3–510. Effective October 1, 1991, per Chapter 8 of the Acts of that year, it also became necessary for those seeking reinstatement to pay, in addition, "[u]nemployment insurance contributions, or reimbursement payments." CA § 3–509. Further, the revival of a corporation's charter validates contracts done in the name of the corporation while the charter was void and restores, unless otherwise divested, all assets and rights of the corporation to the same extent that they were held before forfeiture. CA § 3–512. At no time from October 6, 1993, to the closing of the record for this appeal, however, has Smith revived the charter of Curtis Contractors, Inc.

There are also two Maryland Rules of Procedure, Rules 2–201 and 2–241, which deal with a problem related to, but distinct from, the problem in the case before us. Rule 2–241(a), "Substitution," provides:

"The proper person may be substituted for a party who

"(1) dies, if the action survives,

"(2) becomes incompetent,

"(3) transfers an interest in the action, whether voluntarily or involuntarily,

"(4) if a corporation, dissolves, forfeits its charter, merges, or consolidates, or

"(5) if a public officer, ceases to hold office."

Maryland Rule 2–201, "Real party in interest," in relevant part reads:

"No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for joinder or substitution of the real party in interest. The joinder or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest."

"Substitution," as used in Rule 2–201, has the same meaning as in Rule 2–241. From the standpoint of prosecuting an action, the reference to forfeiture in Rule 2–241(a)(4) ordinarily involves a situation where an action had been instituted by a corporation in good standing that, during the pendency of the suit, suffered a forfeiture of charter and, without articles of revival having been filed, the directors-trustees prosecute the action in connection with the liquidation of the affairs of the defunct corporation. *See* CA § 3–515(c). That substitution relates back per Rule 2–201. Here, however, Smith is not asserting a claim owned by the corporation at forfeiture and is not suing as the only director-trustee. Thus, in order for Smith to avoid the operation of the statute of limitations, relation back under the amendment rule, Rule 2–341, must apply where the action is instituted by a defunct corporation.

This Court's analysis of the effect of the institution of an action in the name of a defunct corporation is found in *Atlantic Mill & Lumber Realty Co. v. Keefer,* 179 Md. 496, 20 A.2d 178 (1941). In that case a corporation whose charter had been forfeited purportedly filed a mechanics' lien and a bill of complaint to enforce the mechanics' lien. *Id.* at 497, 20 A.2d at 179. After the expiration of the time within which a mechanics' lien could be filed, the lien filing and the bill of complaint to enforce were amended by naming "Herman M. Meyer, trading as the Atlantic Mill & Lumber Company," as claimant and plaintiff, in lieu of the defunct corporation,

"Atlantic Mill & Lumber Realty Company, Incorporated." *Id.* The amended bill was dismissed on demurrer, and this Court affirmed. We stated:

> "The original mechanics' lien ... was inoperative, null and void as the petitioner was not in existence and had no power to file the lien. Such petitioner not being in existence and having no authority to enforce rights acquired during the life of its charter could not file the alleged mechanics' lien, could not file the original bill of complaint for its enforcement, could not file a petition for authority to file an amended bill of complaint. The amended lien was not filed by the directors of the corporation as trustees nor by a receiver or receivers of the corporation, but by 'Herman M. Meyer, trading as Atlantic Mill and Lumber Company.' It therefore appears that the amended bill of complaint of 'Herman M. Meyer, trading as Atlantic Mill and Lumber Company,' was an entirely new action and that the amended mechanics' lien, an entirely new claim filed more than six months after the time fixed by statute[,] was no lien and is, therefore, not enforceable."

*Id.* at 500–01, 20 A.2d at 181 (citation omitted).

In the instant matter Smith seeks to distinguish *Atlantic Mill*, asserting that the materials giving rise to the lien claim in that case were provided when the corporation was in good standing. As we read *Atlantic Mill*, it is silent on that point. Nevertheless, even if the materials were provided prior to forfeiture of the corporation's charter, the distinction would be immaterial. The point is that under *Atlantic Mill* there was no relation back, and the filing of the amended complaint to enforce was "an entirely new action." This Court said that the then applicable forfeiture statute did not permit Meyer to take advantage of a lien filed by a "nonentity." *Id.* at 501, 20 A.2d at 181.

There are a number of cases dealing with revival, or attempted revival, under the Maryland corporation laws which clearly indicate that the original complaint filed in the name of Curtis Contractors, Inc. in this case had no effect, so that

there was nothing to which the amended complaint could relate back. In *Cloverfields,* 280 Md. 382, 373 A.2d 935, the contest was between rival claimants to the power to control the application of restrictive covenants in a residential development. The improvement association claimed under a 1965 assignment from a corporation whose charter had been forfeited in 1964. *Id.* at 385, 373 A.2d at 936–37. The other claimant, Seabreeze Properties, Inc., claimed under a 1971 assignment from the last directors of the defunct corporation. *Id.* at 386, 373 A.2d at 937. Articles of revival had been filed in 1973, some nine months after the improvement association had brought the declaratory judgment action that is the subject of the reported case. *Id.* We held that the articles of revival did not retroactively make effective the assignment in the name of the defunct corporation because, in the interval between that assignment and the revival, the authorized directors-trustees had validly assigned. *Id.* at 398, 373 A.2d at 943.

Of particular relevance to the case before us is the alternative argument of the improvement association in *Cloverfields* which contended that the assignee from the directors-trustees could not be a bona fide purchaser because that assignee had actual knowledge of the prior rights and equities of the improvement association. We rejected this argument saying that "[t]he 1965 instruments were void because the corporation was dead and its powers terminated." *Id.* at 399, 373 A.2d at 944. We analogized to the lack of constructive notice given by the recording of a forged deed. *Id. Cloverfields* also favorably quoted the passage from *Atlantic Mill* that we have quoted above. *Cloverfields,* 280 Md. at 393–94, 373 A.2d at 941.

*American–Stewart Distillery, Inc. v. Stewart Distilling Co.,* 168 Md. 212, 177 A. 473 (1935), was a contest over the use of the name of a corporation whose charter had been forfeited. We held that the entity that had adopted the name of the forfeited corporation during the period of forfeiture was entitled to continue to use the name after revival of the charter of the earlier user of the name. We pointed out that, under the

corporation statutes, " 'the powers granted to such [forfeited] corporations shall be inoperative, null and void.' " *Id.* at 217, 177 A. at 475.

The following sequence of events was involved in *Kroop & Kurland, P.A. v. Lambros*, 118 Md.App. 651, 703 A.2d 1287 (1998). A professional association had rendered services and obtained a judgment for payment of the services while it was in good standing. *Id.* at 654, 703 A.2d at 1288. In the twelve years following entry of the judgment, see Md. Rule 2–625, the professional association's charter was forfeited, but the judgment was purportedly renewed in the corporate name.[5] *Id.* at 655, 703 A.2d at 1288. Subsequently, the judgment was sold to the plaintiff. The plaintiff filed a claim against the estate of the deceased judgment debtor which was disallowed by the personal representative. *Id.* Thereafter the plaintiff revived the professional association charter, and the claim was allowed by the orphans' court. *Id.,* 703 A.2d at 1289. The circuit court, however, held that the renewal of the judgment was null and void because the corporation did not exist, and the ineffectiveness of the renewal of the judgment had not been cured by the later revival of the corporate charter. *Id.* at 656, 703 A.2d at 1289. The Court of Special Appeals affirmed. That court held that "during the period in which [the professional association] was defunct, it was divested of its right as a judgment creditor ... by expiration of the judgment" and that the judgment was not restored upon revival of the charter. *Id.* at 667, 703 A.2d at 1294.

*Psychic Research & Development Institute of Maryland, Inc. v. Gutbrodt*, 46 Md.App. 21, 415 A.2d 611 (1980), was relied upon by the United States District Court for the District of Maryland in a case involving a limitations defense. *United States v. Firemen's Ins. Co.*, 869 F.Supp. 347, 348 (D.Md.1994). In *Psychic Research* a testamentary bequest to

---

5. Renewal of a money judgment is effected by filing a notice of renewal with the Clerk of the Court. Md. Rule 2–625. Service of the notice of renewal must be made on the judgment debtor in accordance with Rule 1–321.

a corporation required that it be in existence at the time of the testatrix's death. 46 Md.App. at 23–24, 415 A.2d at 613. At that time the legatee's charter had been forfeited, and the gift was distributed to the alternate legatee named in the will. The Court of Special Appeals held that the subsequent filing of articles of revival could not thwart the gift over. *Id.* at 28, 415 A.2d at 615. In *Psychic Research* the Court of Special Appeals said:

> "The Articles of Revival can spontaneously generate life in a dead corporation, but they cannot restore to it rights that passed to others during the period of the corporate abiosis. The subsequent revival of Psychic did not again vest property and rights in the corporation which were divested during the period of forfeiture."

*Id.*

*Firemen's Insurance Co.* was brought under the Miller Act. The complaint against the bonding company was filed in the name of a corporation which was then defunct, but the filing was made within the period of limitations. 869 F.Supp. at 348. When the lack of capacity to sue of the corporate plaintiff was raised by the bonding company, articles of revival were filed, but they were not filed until after the expiration of the period for filing claims against Miller Act bonds. *Id.* United States District Judge Messitte saw no difference "between inheritance rights that vest in an alternate beneficiary when a corporate beneficiary's charter is forfeit and the right of a defendant to claim the benefit of a limitations defense that accrues while a corporation's charter is in similar status." *Id.* at 349.

In the instant matter Smith has not attempted to revive the charter of Curtis Contractors, Inc. Inasmuch as filing of articles of revival are ineffective to achieve relation back to the date of filing of an action by a defunct corporation, *a fortiori*, simply amending a complaint filed by a defunct corporation which has not been revived by replacing the named corporate plaintiff with the last owner of the defunct corporation does not effect relation back. Indeed, to permit

relation back under the circumstances here as an application of the amendment rule, Rule 2–341, when it is not permitted under the substitution rule, Rule 2–241, would be contrary to the well settled policy that corporations and individuals are separate entities. "[T]he corporate entity will be disregarded only when necessary to prevent fraud or to enforce a paramount equity." *Bart Arconti & Sons, Inc. v. Ames–Ennis, Inc.*, 275 Md. 295, 312, 340 A.2d 225, 235 (1975). *See also Ferguson Trenching Co. v. Kiehne*, 329 Md. 169, 175, 618 A.2d 735, 738 (1993); *Starfish Condominium Ass'n v. Yorkridge Serv. Corp.*, 295 Md. 693, 714, 458 A.2d 805, 816 (1983); *Residential Warranty Corp. v. Bancroft Homes Greenspring Valley, Inc.*, 126 Md.App. 294, 306–07, 728 A.2d 783, 789, *cert. denied,* 355 Md. 613, 735 A.2d 1107 (1999).

There is also a strong analogy between the problem in the case before us and the purported filing of an action against a person who is deceased at that time. In *Burket v. Aldridge*, 241 Md. 423, 430, 216 A.2d 910, 913 (1966), we said that "the action filed by Burket against Smith, a few days before the expiration of the three year period from the date of the injuries, had no legal effect. Smith was dead, and an action brought against a dead man is a nullity." *See also Hunt v. Tague*, 205 Md. 369, 378–79, 109 A.2d 80, 85 (1954) (same); *Cromwell v. Ripley*, 11 Md.App. 173, 174, 273 A.2d 218, 219 (1971) (same); *Moul v. Pace*, 261 F.Supp. 616, 618 (D.Md. 1966) (same).[6] We perceive no reason why an action purportedly brought by a defunct corporation has any more efficacy than an action brought against a deceased individual defendant, absent an express rule or statute, such as that permitting substitution of the last directors-trustees when enforcing an asset held by the corporation at forfeiture.

---

**6.** The rule that an action filed against a deceased individual does not stop the running of the statute of limitations has been modified where the decedent was covered by liability insurance for the occurrence. *See* Md.Code (1974, 1991 Repl.Vol.), § 8–104(e) of the Estates and Trusts Article. *See also Greentree v. Fertitta*, 338 Md. 621, 659 A.2d 1325 (1995).

*Zappone,* 349 Md. 45, 706 A.2d 1060, on which the Court of Special Appeals relied, illustrates the liberality of this Court's application of the relation back principle in cases of amendment, but the holding of that case cannot apply here. *Zappone* involved a multi-count complaint brought by Ricardo D. Zappone (Zappone) who was the sole shareholder of a corporation, Print–A–Copy, Inc., which was at all relevant times in good standing. *Id.* at 52, 706 A.2d at 1064. Zappone sued a number of defendants who had rendered financial services to him alleging, principally, fraud and negligent misrepresentation of the costs to be paid and benefits to be realized on a retirement annuity. *Id.* at 56, 706 A.2d at 1065–66. Part of the alleged representations was that Print–A–Copy, Inc. could deduct from its income tax the interest on a bank loan that the corporation in turn had loaned to Zappone for a lump sum annuity premium. *Id.* After the statute of limitations had run, Zappone amended the complaint to add Print–A–Copy, Inc. as a party plaintiff. The amended complaint claimed in Counts V and VI for the loss sustained due to the nondeductibility of the interest payments to the lender bank. The trial court refused to apply the doctrine of relation back to Counts V and VI, a ruling that this Court reversed. *Id.* at 68, 706 A.2d at 1072.

We said that this Court "had liberally applied the relation back doctrine in other contexts, always emphasizing whether a proposed amendment, if allowed, would substantially prejudice a defendant by submitting that defendant to unfair surprise, hardship, or an undue burden in defending the plaintiff's amended allegations." *Id.* at 69–70, 706 A.2d at 1072. We pointed out that, from the beginning of the *Zappone* lawsuit, the defendants had been on notice of a claim based on the nondeductibility of interest. *Id.* at 70, 706 A.2d at 1072. We said that amended Counts V and VI "simply refined and clarified the allegations of the initial complaint by more precisely stating the proper plaintiff who was injured by the defendants' allegedly fraudulent and/or negligent conduct." *Id.*

We do not retreat from the policy enunciated in *Zappone* of liberally applying the relation back doctrine. In the instant case, however, Smith cannot prevail without an expansion of the doctrine, but it is an expansion that we cannot make. We do not deal with substitution under Rule 2–241, and, consequently, Rule 2–201 does not apply. Any effort to apply relation back by amendment to the original complaint filed by the defunct corporation encounters CA § 3–503 which declares that forfeiture of the corporate charter renders the corporate powers "inoperative, null, and void." The statutory method for restoration of those powers is filing articles of revival, which Smith has not done. Instead, Smith has done business under the name Curtis Contractors, Inc. for more than twelve years prior to filing the instant action in that name—a seemingly clear violation of CA § 3–514 which reads:

"(a) *Prohibition.*—Any person who transacts business in the name or for the account of a corporation knowing that its charter has been forfeited and has not been revived is guilty of a misdemeanor and on conviction is subject to a fine of not more than $500.

"(b) *Presumption.*—For the purpose of this section, unless there is clear evidence to the contrary, a person who was an officer or director of a corporation at the time its charter was forfeited is presumed to know of the forfeiture.

"(c) *Limitation.*—A prosecution for violation of the provisions of this section may not be instituted after the date articles of revival of the corporation are filed."

If we were to hold that Smith escapes the statute of limitations by doing business and filing suit in the name of a defunct corporation, simply by purportedly amending to bring the action in his individual name after the corporate status had been challenged and limitations had otherwise run, we would expand the liberality of relation back to the point where it clashes with the legislative policy requiring back taxes to be

paid before powers can be reconferred on a defunct corporation.[7]

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT FOR THE ENTRY OF A JUDGMENT AFFIRMING THE JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE RESPONDENT, ROBERT E. SMITH, JR.

---

**7.** At oral argument in this Court Smith suggested that it was material that Charles Stein and Smith may have had a close personal and professional relationship that may have resulted in the Steins having had notice of the legal status of Curtis Contractors, Inc. Whether the Steins should be estopped from pleading limitations or raising the defense of lack of capacity of Curtis Contractors, Inc. to sue, however, is not before us. Estoppel was not raised in the Circuit Court for Anne Arundel County or in Smith's brief filed in the Court of Special Appeals. It is not an issue that was raised by Smith in a cross-petition for certiorari.