**In re Francois MITON, Debtor**

**Mintec Corporation, Plaintiff**

v.

**Francois Miton, Defendant.**

**Bankruptcy No. 06–14724–RAG.**
**Adversary No. 06–1788.**

United States Bankruptcy Court,
D. Maryland.

Dec. 11, 2007.

Francis R. Laws, Esq., John R. Wise, Esq., Sara A. Levinson, Esq., Thomas & Libowitz, P.A., Baltimore, MD, for Plaintiff.

Kenneth F. Davies, Esq., James W. Constable, Esq., Wright, Constable & Skeen, LLP, Baltimore, MD, for Defendant/Debtor.

## MEMORANDUM OPINION AND ORDER TREATING MOTION TO DISMISS AS A MOTION FOR SUMMARY JUDGMENT AND GRANTING THE SAME

ROBERT A. GORDON, Bankruptcy Judge.

### Preliminary Statement

Before the Court for consideration at a hearing held on November 14, 2007 was the Motion to Dismiss (dkt.29) filed by Francois Miton (hereafter "Defendant" or "Debtor") on May 18, 2007. Mintec Corporation (hereafter "Plaintiff" or "Mintec") filed its Opposition (dkt.31) on June 7, 2007 and Debtor filed his Reply (dkt.42) on June 18, 2007. At a discovery hearing held on October 9, 2007, the Court provided its initial impressions on the Motion to Dismiss and supporting papers and directed the Parties to submit additional memoranda to provide a more in-depth analysis of their respective positions and the governing Maryland law. On November 7, 2007, Plaintiff submitted its Supplemental Memorandum in Opposition (dkt.91) and Debtor submitted his Supplemental Memorandum in Support (dkt.92).

The question presented is whether a Maryland corporation whose charter has been forfeited can pursue an action for denial of discharge under 11 U.S.C. § 727 and determination of nondischargeability under 11 U.S.C. § 523 [1]. The question having been fully briefed by the Parties and the Court having afforded them an opportunity to argue their respective positions, the Motion to Dismiss, for the reasons that follow, shall be treated as a motion for summary judgment [2] and as such, shall be granted.

### Facts

On August 9, 2006, Debtor filed a petition under Chapter 7 of Title 11. On his Schedule F, Creditors Holding Unsecured, Nonpriority Claims, Debtor listed Plaintiff as having a disputed claim in the amount of $453,981 pursuant to a final arbitration award [3]. The Notice of Chapter 7 Bankruptcy Case issued the same day set a deadline of November 13, 2006 to file complaints objecting to discharge and to determine the dischargeability of particular debts. The Chapter 7 Trustee sought several extensions of time to object to the

---

**1.** Hereafter, all statutory citations are to the Bankruptcy Code, found at Title 11 of the United States Code, unless otherwise noted.

**2.** Since the Motion to Dismiss presents matters outside of the pleadings, the Court must treat it as a motion for summary judgment governed by Rule 7056. See Fed.R.Civ.P. 12(b), as incorporated by Fed. R. Bankr.P. 7012. As there is no issue as to any material fact and the Debtor is entitled to a judgment as a matter of law, it is appropriate to enter a judgment of dismissal in favor of the Debtor. Fed.R.Civ.P. 56, as incorporated by Fed. R. Bankr.P. 7056.

**3.** The Court assumes that the arbitration award was converted to a final judgment. Debtor does not dispute that Mintec sued Debtor in state court in November 2004 and that the Parties subsequently agreed to have an arbitrator resolve Mintec's claims. In paragraph 4 of the Amended Complaint, Mintec asserts that Debtor is indebted to it in the sum of $453,981 pursuant to a judgment debt. Debtor does not contest this characterization of the debt.

Debtor's discharge, but such extended period eventually lapsed on May 2, 2007 without the Trustee having taken any action to contest the Debtor's right to a discharge[4]. On October 26, 2007, the Trustee filed his line indicating there were no assets to administer for the benefit of creditors.

On November 13, 2006, the very last day possible, Plaintiff filed a four-count Complaint seeking to have its judgment declared nondischargeable[5]. On February 21, 2007, Plaintiff filed a seven-count Amended Complaint, seeking denial of discharge under Sections 727(a)(2), (3), (4), and (5) and a determination of nondischargeability under Sections 523(a)(2), (4), and (6). All of the allegations relate back to Debtor's unfortunate tenure as Plaintiff's President and, in some cases, the events underlying the subsequent lawsuit and arbitration proceeding.

According to the Amended Complaint, Mintec, a Maryland corporation, was engaged in the import and sale of bamboo flooring. Debtor was terminated in August 2004 for alleged self-dealing, the looting of the company, and breaches of fiduciary duty among other bad acts. Specifically, Plaintiff asserts that Debtor diverted funds to himself in the form of unauthorized commissions while simultaneously setting up rival enterprises to siphon business opportunities and assets from Mintec while he was still employed as its President. Arbitrator Hilary D.

Caplan found Plaintiff's claims as to Debtor's liability to be completely meritorious. Plaintiff's damage claims were reduced, however, and Arbitrator Caplan ultimately decided upon an award of $458,981 in Plaintiff's favor. His April 8, 2006 Report memorializing the award is attached to the Amended Complaint. Debtor filed his Answer to the Amended Complaint on March 30, 2007 and generally denied the material averments lodged against him.

Debtor then filed the instant Motion to Dismiss. Debtor contends that when Plaintiff filed both its original and Amended Complaints, its corporate charter had been forfeited[6]. Debtor claims Mintec was therefore a legal nullity and lacked the capacity to bring this action. Mintec revived its charter on May 31, 2007, after the Motion to Dismiss was filed. See Opposition at Exh. 2. Nevertheless, Debtor reasons that since the applicable deadline to file complaints objecting to discharge and dischargeability passed before revival, Mintec was divested of the right to bring this action under Maryland law and is now barred from re-filing it by operation of the Federal Rules of Bankruptcy Procedure.

Plaintiff counters that although its charter was forfeited, the ability to wind up its affairs, in part through the liquidation and distribution of its assets, remained intact in light of the provisions of the governing Maryland statute. Therefore, Plaintiff asserts, the pursuit of the Debtor in the

---

**4.** Debtor received his discharge on May 7, 2007. Since this Adversary Proceeding, which requests the denial of discharge, was still pending at that time, it appears the discharge order was improvidently entered. However, since this Adversary Proceeding will be dismissed, the discharge order will not be vacated.

**5.** Plaintiff cited to Sections 523(a)(2) and (4) but the Complaint sounded in violations of Section 727(a).

**6.** According to a report dated April 20, 2007 from the Maryland Department of Assessments and Taxation attached as Exh. A to the Motion to Dismiss, Mintec's charter was forfeited on October 6, 2006 for the failure to file its 2005 property tax return. Mintec has not challenged the veracity of this report.

name of the corporation in the new arena of bankruptcy is part and parcel of that statutorily authorized process [7]. Mintec emphasizes that it already was in possession of a judgment against Debtor and was only compelled to file this superficially redundant Adversary Proceeding because of Debtor's decision to file bankruptcy.

## Analysis

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157 and § 1334 and Local Rule 402 of the United States District Court for the District of Maryland. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) and (J). Venue of this Adversary Proceeding is proper in this district and division pursuant to 28 U.S.C. § 1408.

The lines of battle having been adequately described, the next step is to determine what effect the uncontradicted forfeiture of Mintec's charter had on its ability to bring this action. The Maryland Court of Appeals has recently, unequivocally affirmed the settled principles that "a corporation, the charter for which is forfeit, is a legal non-entity" and that all powers conferred to the corporation by law, including the power to sue or be sued, are "extinguished generally as of and during the forfeiture period". *Dual Inc. et al. v. Lockheed Martin Corp.*, 857 A.2d 1095, 1101, 383 Md. 151, 164 (Md.2004), citing to Md.Code Ann., Corps. & Ass'ns § 2–103(2) and § 3–503(d) [8]. See also *Stein v. Smith*, 751 A.2d 504, 506–507, 358 Md. 670,

---

7. The Affidavit of Philippe Veillet–Lavallee, a director and majority shareholder of Mintec, states that Mintec sold its assets to another business in August 2004, that it is no longer operating, and is in the process of winding up its affairs. See Opposition at Exh. 1.

8. § 2–103. *Powers of corporation*

Unless otherwise provided by law or its charter, a Maryland corporation has the general powers, whether or not they are set forth in its charter, to:

(2) Sue, be sued, complain, and defend in all courts;

§ 3–503. *Proclamation of forfeiture of charter*

(a)(1) Except with respect to a tax collectable locally, immediately after September 30 of each year, the State Comptroller shall certify to the Department a list of every Maryland corporation which has not paid a tax due before October 1 of the year after the tax became due.

(2) When the Comptroller certifies the list to the Department, the Comptroller shall mail to each listed corporation, at its address as it appears on the Comptroller's records, a notice that its charter will be repealed, annulled, and forfeited unless all taxes, interest, and penalties due by it are paid.

(3) The mailing of the notice is sufficient, and the failure of any corporation to receive the notice mailed to it does not affect the repeal, annulment, and forfeiture of its charter.

(b)(1) Immediately after September 30 of each year, the Secretary of Labor, Licensing, and Regulation shall certify to the Department a list of every Maryland corporation that has not paid an unemployment insurance contribution or made a reimbursement payment due before October 1 of the year after the contribution or payment became due.

(2) When the Secretary certifies the list to the Department, the Secretary shall mail to each listed corporation, at its address as it appears on the Secretary's records, a notice that the charter of the corporation will be repealed, annulled, and forfeited unless all contributions, reimbursement payments, interest, and penalties due by the corporation are paid.

(3) The mailing of the notice is sufficient, and the failure of any corporation to receive the notice mailed to it does not affect the repeal, annulment, and forfeiture of the charter of the corporation.

(c) Immediately after September 30 of each year, the Department shall certify a list of every Maryland corporation which has not filed an annual report with the Department as required by law or has not paid a tax before October 1 of the year after the report was required to be filed or the taxes were due.

(d) After the lists are certified, the Department shall issue a proclamation declaring

674–76 (Md.2000). Thus, Mintec became a non-entity as of October 6, 2006 when it forfeited its charter and the initial Complaint, filed during the forfeiture period, was a nullity. *Dual Inc.*, 857 A.2d at 1101. This conclusion would likewise extend to the Amended Complaint, which also was filed during the period of forfeiture.

■■■ Upon the forfeiture of a corporate charter, the directors become trustees vested with full title to all corporate assets. However, they are granted that position only for "purposes of liquidation". Md. Code Ann., Corps. & Ass'ns § 3–515(a) and (b). For example, director-trustees may sue or be sued in their own names as trustees or in the name of the corporation and take other specific actions calculated to liquidate the corporation and wind up its affairs. Md.Code Ann., Corps. & Ass'ns § 3–515(c)(3) and (4). Although Mintec was a non-entity and lacked the capacity to sue in its own name, a director-trustee of the corporation possibly could have brought the suit in the trustee's own name

if filed to wind-up Mintec's affairs. *Dual Inc.*, 857 A.2d at 1101–1102 [9]; *Stein*, 751 A.2d at 507 [10]. This did not happen though. Instead of a director-trustee of Mintec filing this action on behalf of Mintec, the Complaint named the null and void corporation itself as Plaintiff. From its forfeited posture, Mintec was legally disabled from standing as a party plaintiff and hence the original Complaint cannot be rescued by the wind-up provisions of Md.Code Ann., Corps. & Ass'ns § 3–515 [11].

■■■ Mintec did properly revive its forfeited charter on May 31, 2007. However, revival cannot serve to resuscitate this cause of action. As the Court of Appeals noted in *Dual, Inc., supra*, "while the revival of a corporate charter may validate retrospectively the capacity of a corporation to sue in certain circumstances", it "does not restore *rights that were divested* during the period when the corporate charter was forfeit". *Dual Inc.*, 857 A.2d at 1103, citing to Md.Code Ann.,

that the charters of the corporations are repealed, annulled, and forfeited, and the powers conferred by law on the corporations are inoperative, null, and void as of the date of the proclamation, without proceedings of any kind either at law or in equity.

9. In *Dual Inc., supra*, J. Frederick Dual, a non-lawyer, filed the complaint naming Dual Inc. (Dual) and himself, as president and sole shareholder of Dual, as plaintiffs. At the time the suit was filed, Dual's charter was forfeit. In an affidavit attached to his opposition to a motion to dismiss, Mr. Dual for the first time also claimed to be a director of Dual and asserted the action was filed to preserve the corporation's claims. The Maryland Court of Appeals assumed that Mr. Dual intended to file suit as a director-trustee of Dual in order to satisfy the initial requirement of Md.Code Ann., Corps. & Ass'ns § 3–515. Nevertheless, dismissal was still held to be appropriate as, (1) Dual was a legal non-entity incapable of filing suit and (2) the factual finding of the

lower court that the litigation was not for purposes of "winding-up" was determined to be correct.

10. In *Stein, supra*, the initial complaint named Curtis Contractors, Inc. as the sole plaintiff. Curtis Contractors, Inc.'s charter had been forfeited for fourteen years at the time the action was initiated. Thereafter an amended complaint was filed which re-captioned the plaintiff's name as Robert E. Smith, Jr. d/b/a Curtis Contractors, Inc. The Maryland Court of Appeals did not address whether the amended complaint was properly filed in accordance with Md.Code Ann., Corps. & Ass'ns § 3–515, as any cause of action arose long after the forfeiture of Curtis Contractors, Inc.'s charter. Hence, the initial complaint was deemed a nullity and for that reason no relation back was allowed.

11. Since the Court holds that Mintec could not have filed this action, the larger factual issue of whether it is in fact winding up its affairs need not be reached.

Corps. & Ass'ns § 3–512(2) [12] *(emphasis supplied)*. Thus, if a pre-existing claim becomes barred by the expiry of an applicable limitations period, charter revival cannot serve to reanimate the extinguished claim. *Id. See also U.S. v. Firemen's Ins. Co. of Newark, N.J.*, 869 F.Supp. 347, 348–349 (D.Md.1994). For these reasons, the controlling periods of limitation, embodied in Bankruptcy Rules 4004(a) and 4007(c), now bar this cause of action.

▪ The expeditious filing of discharge and dischargeability actions is a part of the common currency of bankruptcy. The Federal Rules of Bankruptcy Procedure generally require such actions to be filed no later than 60 days after the first date set for the meeting of creditors, absent a request for an extension of time filed before the period has expired. Fed. R. Bankr.P. 4004(a), (b) and 4007(c). The time limit found in Rule 4007(c), while not a jurisdictional prerequisite, is analogous to a statute of limitations. *In re McKoy*, 211 B.R. 843, 846 (E.D.Va.1997), citing to *Farouki v. Emirates Bank Int'l, Ltd.*, 14 F.3d 244, 247–248 (4th Cir.1994) (addressing the deadline for filing a complaint for denial of discharge under Rule 4004 and noting that Rules 4004 and 4007 should be treated *in pari materia*). *See also Dean v. McDow*, 299 B.R. 133, 138 (E.D.Va.2003) (same principle applies in the context of an action to revoke discharge under Section

727(d) and (e)) and *In re Hayden*, 246 B.R. 795, 800 (Bankr.D.S.C.1999) (same result as in *McKoy, supra* ). Additionally, Rule 9006(b)(3) only allows for the enlargement of such periods under the conditions stated in Rules 4004 and 4007. Thus, strict deadlines are fixed for the filing of discharge and dischargeability adversary proceedings. Under the circumstances of this case, the operation of those deadlines is fatal to Mintec's cause.

*Conclusion*

The Plaintiff does not dispute that it had to initiate its action by November 13, 2006. Since the timely-filed original Complaint, naming only Mintec Corp. as Plaintiff, was a nullity, it was ineffective for the purpose of tolling the time for filing a complaint to deny the Debtor's discharge and to determine the arbitration award to be nondischargeable. Thus, the limitations period expired at midnight on November 14, 2006 without an action having been properly initiated. As the original Complaint was a complete nullity, Plaintiff cannot relate any subsequently filed amended complaint back to the same and Plaintiff is now barred by Rules 4004 and 4007 from re-filing this action [13]. Thus, as it appears to the Court that the Plaintiff is unable as a matter of law to further prosecute this matter, the Court will grant Debtor's Motion to Dismiss [14].

---

**12.** *§ 3–512. Revival or extension, effect*

The reinstatement and extension of a corporation's existence under § 3–501 of this subtitle or the revival of a corporation's charter under § 3–507 of this subtitle has the following effects:

2) All the assets and rights of the corporation, except those sold or those of which it was otherwise divested while the charter was void, are restored to the corporation to the same extent that they were held by the corporation before the expiration or forfeiture of the charter.

**13.** On November 5, 2007, Mintec filed a Motion for Leave to Amend Complaint (dkt.90), in which it seeks authorization to file a Second Amended Complaint to add Mr. Veillet–Lavallee as a plaintiff in his capacity as a director-trustee of Mintec. However, since the original Complaint was a nullity there is in fact nothing to amend. Granting this motion at this point in time would be tantamount to allowing Mintec to file a new action after the limitations period has expired.

**14.** The Court notes that this result does have an aura of unfairness in light of the circumstances. It seems to be undisputed that the

It is, therefore, by the United States Bankruptcy Court for the District of Maryland,

ORDERED, that the Motion to Dismiss is hereby **granted.**

conflict between Mintec and the Debtor led directly to the filing of this bankruptcy case. Moreover, it also appears that the Debtor may have engaged in seemingly unconscionable conduct with respect to the Plaintiff and its business. This decision effectively insulates Debtor from personal responsibility for the judgment awarded as a result of the conduct described in Arbitrator Caplan's report. Nevertheless, the law appears to be crystal clear on this issue and with that being the case, a judgment of dismissal is inescapable.