**MINTEC CORPORATION,**
**Plaintiff/Appellant,**

v.

**Francois MITON, Defendant/Appellee.**

**Civil Action No. RWT 08–71.**

United States District Court,
D. Maryland,
Southern Division.

July 10, 2008.

Francis R. Laws, John R. Wise, Sara A. Levinson, Thomas and Libowitz PA, Baltimore, MD, for Plaintiff/Appellant.

James W. Constable, Kenneth F. Davies, Robert W. Hesselbacher, Jr., Wright Constable and Skeen LLP, Baltimore, MD, for Defendant/Appellee.

### MEMORANDUM OPINION

ROGER W. TITUS, District Judge.

This bankruptcy appeal presents a corporate "life after death" question. More precisely, it raises the questions of what, if any, "life" a Maryland corporation has following its corporate "death" at the hands of the State and what relevance there is to its later "resurrection." The "death" of a Maryland corporation for failure to file personal property tax returns is, for most purposes, a "mortal" event, but the Court concludes that for such a corporation there is a small measure of "life after death" and prior to any "resurrection," but only to the extent that it is legitimately seeking to wind up its affairs.

### The Rise and Fall of Mintec Corporation

The hero of this saga is Mintec Corporation ("Mintec"), whose corporate life began on November 20, 1991, when Articles of Incorporation were accepted for record by the Maryland State Department of Assessments and Taxation. The business of Mintec was the importation of bamboo flooring and paneling, which was sold to commercial and residential customers nationwide. Until August 12, 2004, Francois Miton ("Miton") was the president of Mintec. In retrospect, his stewardship of the corporation was apparently far less than satisfactory. Ultimately, arbitrator (and retired Maryland Circuit Court Judge) Hilary D. Caplan found, by clear and convincing evidence, that Miton had diverted not only his interests, but also his loyalty, away from Mintec to himself and to another corporation created by him. Concluding that his acts constituted a breach of his fiduciary duties and had resulted in an unjust enrichment for Miton, Caplan awarded $453,981.00 to his former employer, Mintec.[1] The havoc wreaked upon Mintec by Miton's actions was so severe that it went out of business and began the process of liquidation.

### The Bankruptcy Proceedings

Apparently, the judgment on the arbitrator's award caused Miton financial distress, and he filed a voluntary petition for Chapter 7 bankruptcy on August 9, 2006.

---

1. After Mintec terminated Miton, it sued Miton and the corporation formed by Miton, but the parties later agreed to arbitration of the issues. Subsequent to the arbitration, judgment was entered in the Circuit Court for Baltimore County confirming the arbitrator's award and entering judgment against Miton and the corporation formed by him. *Mintec Corp. v. Kespera Corp., et al.*, Circuit Court for Baltimore County, Civil No. 03CO4011719.

(United States Bankruptcy Court for the District of Maryland, Bankruptcy Petition No. 06–14724). On Schedule F of his Bankruptcy Petition, Miton reported as "disputed" the judgment on the arbitration award entered against him in favor of Mintec. The Notice of Chapter 7 Bankruptcy Case that was issued the same day set a meeting of creditors for September 14, 2006, and established a deadline of November 13, 2006, for the filing of objections by creditors to Miton's discharge and for seeking a determination of the dischargeability of particular debts. Mintec participated in the meeting of creditors on September 14, 2006, but between that date and the deadline for the filing of complaints objecting to the discharge, something happened to Mintec, the significance of which is now before this Court. On October 6, 2006, Mintec's corporate "life" came to an end when its charter was forfeited for its failure to file its 2005 personal property tax return.

On November 13, 2006, Mintec, whose officials apparently were unaware of the forfeiture, filed a complaint in the United States Bankruptcy Court for the District of Maryland (Adversary Proceeding No. 06–01788)objecting to Miton's discharge and seeking a determination that the judgment debt owed to it was not dischargeable. Specifically, Mintec contended that its judgment against Miton was for fraud or defalcation while acting in a fiduciary capacity, embezzlement, and/or larceny, pursuant to 11 U.S.C. § 523(a)(4). On February 21, 2007, Mintec filed an amended complaint, and on March 30, 2007, Miton filed an answer to the amended complaint.

On May 18, 2007, Miton, apparently alerted to the fortunate circumstance of Mintec's corporate demise, moved to dismiss the adversary proceeding on the basis that Mintec's charter had been forfeited at the time that it filed its adversary proceeding, and that its complaint could not then be revived after expiration of the November 13, 2006 deadline. On May 31, 2007, thirteen days after Miton filed his Motion to Dismiss, there was a corporate "resurrection" when Mintec filed Articles of Revival with the Maryland State Department of Assessments and Taxation, reviving its charter and bringing it back to corporate life.[2]

In the bankruptcy proceedings, Miton argued that, because of the forfeiture of its charter, Mintec was a legal nullity and lacked capacity to bring the adversary proceeding. Although the charter had been revived on May 31, 2007, Miton argued that Mintec was divested of the right to bring this action under Maryland law during the forfeiture period, and it was now barred from "refiling" because the applicable deadline for filing complaints objecting to discharge and dischargeability had passed before revival. Mintec countered that, although its charter had been forfeited at the time it filed its complaint, its ability to wind up its affairs, including liquidation and distribution of its assets, remained intact in light of the provisions of the governing Maryland statute.

Extensive information outside the complaint was presented to, and not excluded

---

2. Ironically, the sin leading to Mintec's corporate death was not the failure to *pay taxes*, but rather the failure to file a personal property tax *return*. When the delinquent return was later filed, it reported no tangible personal property, and thus no personal property taxes would have been due had the return been filed in a timely manner. *See* Maryland Department of Assessments and Taxation, Taxpayer Services Division, Business Entity Information (Charter/Personal Property) for Mintec Corporation, Personal Property, *at* http://sdatcert3.resiusa.org/UCC-Charter/CharterSearch_f.aspx (enter Department ID "D03326147"; then click on "Personal Property" hyperlink).

by, the Bankruptcy Court, as a result of which the motion to dismiss was treated as a motion for summary judgment. Mintec submitted the Affidavit of Philippe Veillet–Lavallee, who stated that he was one of the directors and a majority shareholder of Mintec, and that in August 2004 Mintec had sold its assets to another company, and was receiving an "earn-out" over time that expires in 2008. Appellant Br. at Ex. 6 (Pl.'s Opp. To Def.'s Mot. Dismiss at Ex. 4 ¶ 4). His Affidavit went on to state that the company was no longer operating in any capacity and had not conducted any business since 2004. *Id.* ¶ 5. He stated that Mintec had no employees at the time and was winding up its corporate affairs. *Id.* It remained a corporate entity after the sale of its assets to another company, he explained, for the purposes of receiving the earn-out and to recoup its damages caused by Miton and others. *Id.* ¶ 6. He also stated that Mintec had filed the adversary proceeding in order to collect the $453,981 judgment that it had obtained against Miton, consistent with Mintec's obligation to collect any remaining company assets, and in order to liquidate the company and wind up its affairs. *Id.* ¶ 7. This Affidavit was not contradicted.

On November 14, 2007, the Bankruptcy Court held a hearing on Miton's motion, and on December 11, 2007, it entered a Memorandum Opinion and Order Treating the Motion to Dismiss as a Motion for Summary Judgment and Granting the Same. *In re Miton,* 379 B.R. 569 (Bankr. D.Md.2007). In its Opinion, the Bankruptcy Court concluded that under Maryland law, once a corporate charter is forfeited, the company is a legal non-entity and all powers conferred on the corporation by law, including the power to sue or be sued, are " 'extinguished generally and as of and during the forfeiture period.' " *Id.* at 573–74 (quoting *Dual, Inc. v. Lockheed Martin Corp.,* 383 Md. 151, 857 A.2d 1095, 1101

(2004)). The Bankruptcy Court noted that, upon the forfeiture of a corporate charter, the directors become trustees vested with full title to all corporate assets, but they are granted that position only for " 'purposes of liquidation.' " *Id.* at 574 (quoting Md.Code Ann., Corps. & Ass'ns § 3–515(a)–(b)). The Bankruptcy Court quoted section 3–515(c), which provides that the director-trustees may sue or be sued in their own name as trustees or in the name of the corporation, and observed that a director-trustee of the corporation possibly could have brought the suit in the trustee's own name if it was filed to wind up Mintec's affairs. *Id.* According to the Bankruptcy Court:

> this did not happen though. Instead of a director-trustee of Mintec filing this action on behalf of Mintec, the complaint named the null and void corporation itself as plaintiff. From its forfeited posture, Mintec was legally disabled from standing as a party plaintiff and hence the original complaint cannot be rescued by the wind-up provisions of Md.Code Ann., Corps. & Ass'ns § 3–515.

*Id.*

The Bankruptcy Court nevertheless recognized that:

> "this result does have an aura of unfairness in light of the circumstances. It seems to be undisputed that the conflict between Mintec and the Debtor led directly to the filing of this bankruptcy case. Moreover, it also appears that the Debtor may have engaged in seemingly unconscionable conduct with respect to the plaintiff and its business. This decision effectively insulates Debtor from personal responsibility for the judgment awarded as a result of the conduct described in Arbitrator Caplan's report. Nevertheless, the law appears to be crystal clear on this issue and with that

being the case, a judgment of dismissal is inescapable."

*Id.* at 575 n. 14.

Mintec, having come back to life through the revival of its corporate charter, objects to the death of its cause of action below, and now seeks review by this Court. For the reasons explained below, the decision of the Bankruptcy Court will be reversed and the case remanded to that court for further proceedings in accordance with this Opinion.[3]

### Standard of Review

The district court reviews a bankruptcy court's findings of fact for clear error and conclusions of law *de novo. In re Official Comm. of Unsecured for Dornier Aviation (N. Am.), Inc.,* 453 F.3d 225, 231 (4th Cir.2006). A grant of summary judgment is reviewed *de novo* under Fed. R.Civ.P. 56. *Tidewater Fin. Co. v. Williams,* 341 B.R. 530, 533 (D.Md.2006)(citing *Century Indemnity Co. v. Nat'l Gypsum Co. Settlement Trust (In re Nat'l Gypsum Co.),* 208 F.3d 498, 504 (5th Cir.2000)).

### Discussion

Individuals in Maryland are protected against cruel and unusual punishments by the Eighth Amendment to the United States Constitution, and section 38 of Article III of the Maryland Constitution prohibits imprisonment for debt. On the other hand, corporations in Maryland are subject to summary "capital punishment" in the form of forfeiture of their state-granted charters not only for failing to pay taxes, but also for the mere failure to file a personal property tax return with the State Department of Assessments and Taxation. *See* Md.Code Ann., Corps. & Ass'ns § 3–503(c)–(d). Maryland law is unmistakably clear that once a forfeiture proclamation is issued by the State Department of Assessments and Taxation, the "powers conferred by law on the corporations [whose charters have been declared forfeited] are inoperative, null, and void as of the date of the proclamation, without proceedings of any kind either at law or in equity." *Id.* § 3–503(d).

In the case of an individual, death is permanent, and once life is over, it is over, unless a resurrection of biblical proportions occurs. The harshness of Maryland's corporate capital punishment scheme, however, is ameliorated by provisions allowing for a corporate resurrection through the vehicle of Articles of Revival once it has atoned for its failures in filing returns or paying taxes. The resurrection, however, is not complete. While "all contracts or other acts done in the name of the corporation while the charter was void are validated, and the corporation is liable for them," and "all the assets and rights of the corporation" are restored to it "to the same extent that they were held by the corporation before the expiration or forfeiture of the charter," assets and rights of the corporation "sold or those of which were otherwise divested while the charter was void *are not restored to it." Id.* § 3–512(1)–(2) (emphasis added); *see also United States v. Firemen's Ins. Co.,* 869 F.Supp. 347, 348–49 (D.Md.1994).

Maryland law generally provides that the "business and affairs of a corporation shall be managed under the direction of a board of directors." Md.Code Ann., Corps. & Ass'ns § 2–401(a). In the case of a corporation that has been required to

---

**3.** The Bankruptcy Court also denied Mintec's motion to amend the complaint to substitute the director-trustees as a plaintiff. In light of this Court's conclusion that the action could be brought in the name of the corporation, it is not necessary to reach the issue of the correctness of this ruling.

endure the ultimate sacrifice as the result of the non-filing of a personal property tax return or non-payment of taxes, the directors no longer have the authority to act as directors, and instead they become "trustees of its assets *for purposes of liquidation.*" *Id.* § 3–515(a) (emphasis added). As director-trustees, they are vested in their capacity as trustees with full title to all assets of the corporation. With regard to the specific subject of litigation, the director-trustees are authorized to "[s]ue or be sued in their own name as trustees *or in the name of the corporation.*" *Id..* § 3–515(c)(3) (emphasis added).

■ This case brings out the contrasting language of the provisions of section 3–503(d) (which describes all powers conferred by law as being "inoperative, null and void") and the winding up provisions of section 3–515 (which describe the liquidating or "winding up" powers of the director-trustees). For reasons explained below, the Court concludes that an action may be brought in the name of a corporation whose charter has been forfeited, without naming the director-trustees as parties, but only if the action is brought in the name of the corporation as part of a good faith liquidation or winding up of the affairs of the corporation.

In those cases in which the action could not reasonably be described as a winding up activity, Maryland courts have uniformly refused to permit an action brought in the name of a corporation to have any effect whatsoever, and have not permitted retroactive effect of the revival provisions in section 3–512, at least where a statute of limitations or other divestment of rights occurs during the forfeiture period. On the other hand, the entirely different provisions of section 3–515 protect the assets of a corporation in liquidation and permit the bringing of an action either in the name of the director-trustees *or* in the

corporation's name, without naming the director-trustees as a party. This conclusion is bolstered by an analysis of the cases described below that demonstrate a consistent refusal to apply the liquidating or winding up powers of a corporation when the actions at issue are incontestably *not* part of any such activity, but not when they are.

The most exhaustive and recent pronouncement of the Court of Appeals of Maryland on the subject of the powers of corporations with forfeited charters is in the opinion *Dual, Inc. v. Lockheed Martin Corp.,* 383 Md. 151, 857 A.2d 1095 (2004). In sharp contrast to the brief period of forfeiture in the present case, the forfeiture in *Dual* had occurred four years and nine months prior to suit. During this long forfeiture period, J. Frederick Dual, Jr., the sole shareholder of Dual, Inc., carried on extensive "business as usual." Purporting to act in his capacities as president and sole shareholder, Mr. Dual then filed a complaint against Lockheed Martin relating to the termination of two contracts in April and May of 1999. The original complaint was never served on Lockheed Martin and, following revival of the corporate charter in July of 2002, an amended complaint was filed, with both Mr. Dual and Dual, Inc., named as plaintiffs. The amended complaint was filed in October of 2002, more than three years after the expiration of the applicable statute of limitations, and Lockheed Martin moved to dismiss.

The Opinion in *Dual* restates the well-established proposition that, as provided by Maryland law, "all powers granted to Dual, Inc. by law, including the power to sue or be sued, were extinguished *generally* as of and during the forfeiture period." *Id.* at 1101 (emphasis added). As did Mintec in the Bankruptcy Court proceedings below, Dual argued that his timely filing of

the original complaint was a winding up or liquidation activity under section 3–515, and thus the action was not barred by limitations. The position taken by Dual was soundly rejected by the Court of Appeals. In doing so, it assumed that Dual intended to file the original suit as a director-trustee, but rejected the safe harbor afforded by this provision because the power under section 3–515 clearly is *intended only for winding up of a corporation's affairs,* while Dual had continued to operate the business for a long period following forfeiture. *Id.* at 1101–02. In the case before this Court, however, it is uncontroverted that the corporation had suffered badly at the hands of Miton, and that, following the termination of Miton's employment, the corporation was in fact liquidating its assets and winding up its affairs, including taking steps to protect a significant asset held by the corporation in the form of its judgment against Miton on the arbitrator's award.

Notably, *Dual* cites to the earlier decision of the Court of Special Appeals in *Patten v. Board of Liquor License Commissioners for Baltimore City,* 107 Md. App. 224, 667 A.2d 940 (1995). As with *Dual,* there was a period of forfeiture of over four years at the time that the corporation purportedly cast a protest vote in opposition to the award of a liquor license. Indeed, its charter was *never* revived. It is noteworthy that the Court of Special Appeals in *Patten* refused to allow the safe harbor of section 3–515 to be utilized, observing that the "length of time between the forfeiture of the charter and the casting of the vote raises an unexplained, perhaps unexplainable, doubt as to there being any logical association between these two actions." *Id.* at 945. The court went on to note that whether a corporate action should be found to be a protected winding up activity is a matter that "needs to be examined on a case-by-case basis." *Id.*

Miton argued below, as he does here, that § 3–515(c) of the Corporations and Associations Article should be read so as to effectively excise the words "or in the name of the corporation." This Court declines to do so because it would be inconsistent with well-recognized rules of statutory construction in Maryland. In *Police Commissioner of Baltimore City v. Dowling,* the Court of Appeals of Maryland described some of the rules applicable to this case:

> Where two statutes deal with the same subject matter as here, they must be construed together if they are not inconsistent with one another. Thus, to the extent possible, full effect should be given to each. This is true notwithstanding the fact that the statutes may have been enacted at different times with no reference to each other, because in that case the rule is that statutes must be harmonized to the extent possible. This principle of statutory construction operates because the law does not favor repeal by implication. Put in slightly different words, "Yet another cardinal rule of statutory construction is that repeals not express will not be found unless demanded by irreconcilability or repugnancy[.]" ... A court may not insert or omit words to make a statute express an intention not evidenced in its original form. The General Assembly is presumed to have had, and acted with respect to, full knowledge and information as to prior and existing law and legislation on the subject of the statute and the policy of the prior law. Absent a clear indication to the contrary, a statute, if reasonably possible, is to be read so that *no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless, or nugatory*[.]

281 Md. 412, 379 A.2d 1007, 1011–12 (1977)(emphasis added)(quoting *Harden v.*

*Mass Transit Admin.,* 277 Md. 399, 354 A.2d 817, 821 (1976)(internal quotation marks omitted), and other citations omitted).

██ It is clear that under Maryland law a corporation loses all of its powers generally when its charter is forfeited under section 3–503, but this must be read together, and in harmony, with the separate winding up and liquidation provisions of section 3–515. The essential thrust of Maryland law is to preclude a corporation from continuing to function as if its existence had never been extinguished, but that it is *not* precluded from engaging in— and indeed is authorized in the name of its director-trustees *or in its own name* to engage in—legitimate winding up activities. This Court cannot think of a more legitimate winding up activity than an attempt to protect one of the only significant remaining assets of a corporation. This is especially so when the liquidation and winding up process was initiated after the corporation's assets were effectively emasculated by a former president who now seeks to take advantage of the plight of his former corporate employer and deprive it of its ability to wind up its affairs and enforce a judgment for fraud obtained by it, and which is not ordinarily subject to discharge under the bankruptcy laws. Here, unlike in *Dual* and *Patten,* the period of forfeiture of the Mintec charter was fairly brief, and it is incontestable on the record before the Bankruptcy Court that the only activity Mintec engaged in during the fairly brief period of forfeiture was the liquidation of its assets and the winding up of its affairs. These powers are specifically retained under Maryland law in the

director-trustees who can sue or be sued in the name of the corporation in the course of good faith liquidation/winding up activities.

This conclusion was also reached by Judge Joan Zeldon of the Superior Court of the District of Columbia in her recent decision in *Eastern Europe, LLC v. Bigdan Corporation,* 2005 WL 757611 (D.C.Super. April 5, 2005). Applying Maryland law, Judge Zeldon concluded that a suit could be maintained against a Maryland corporation whose charter had been forfeited and which was in the midst of legitimate liquidation, without naming the director-trustees as defendants, but serving them. This conclusion is entirely consistent with, and faithful to Maryland law. Once the charter of a corporation is forfeited, it is no longer governed by its board of directors *qua* board of directors and, because of the general extinguishment of its corporate existence, it no longer has officers or a resident agent. However, when a corporation is engaged in legitimate liquidation and winding up activities, it is governed by its director-trustees. Judge Zeldon correctly concluded that a suit could be brought against the corporation in its own name as authorized by section 3–515(c), and that while *service* would need to be made on the director-trustees, they need not be named as additional defendants. The same logic applies in this case. The director-trustees have the authority to bring an action in the name of the corporation, without being named as parties, and that is precisely what took place here in the course of a legitimate liquidation/winding up activity.[4]

---

4. The decision of Judge Peter J. Messitte of this Court in *United States v. Firemen's Insurance Co.,* 869 F.Supp. 347 (D.Md.1994), is of little help to Miton. There, no suggestion was made that a corporation, whose charter had been forfeited, was engaging in winding up

activities when it filed a Miller Act case after its charter had been forfeited which sought to recover under a surety bond for services performed by it. The corporation did not revive its charter until July of 1994, almost a year and a half after suit had been filed, but long

In *Stein v. Smith*, 358 Md. 670, 751 A.2d 504 (2000), the Court of Appeals of Maryland concluded that the statute of limitations was not tolled by the filing of an action in the name of a corporation, whose charter had been forfeited and never revived, that asserted a claim that was not a corporate asset at the time of forfeiture, as would be the case in connection with a legitimate winding up activity. Accordingly, the Court of Appeals correctly concluded that an effort to name the last remaining owner of stock of the corporation as a plaintiff in lieu of the defunct corporation after the statute of limitations had run did not relate back to when the action was instituted.

In *Stein*, the charter of Curtis Contractors, Inc., was forfeited in October of 1983, and was never revived. 751 A.2d at 504–5. The forfeiture occurred eleven years *before* the work was done that was the subject of the action before the court. Nevertheless, the action was brought in the name of the corporation for breach of a contract not even executed until after forfeiture of the charter. The Court of Appeals specifically declined to apply the provisions of § 3–515(c)(3) of the Corporations and Associations Article. 751 A.2d at 507. After noting that this clause authorizes the director-trustees to sue or be sued in their own names as trustees or in the name of the corporation, the court held that it was not applicable because the contract rights being asserted in the action arose long after the forfeiture of the corporate charter. *Id.* The filing of a suit after forfeiture of a charter relating to an asset that did not even come into existence until subsequent to forfeiture certainly cannot be characterized under any circumstances as a winding

up or liquidating activity, but rather an attempt to continue doing corporate "business as usual" without the benefit of the corporate form.

The same conclusion was reached by the Court of Special Appeals in its July 2, 2008, opinion in *Hill Construction v. Sunrise Beach, LLC,* 180 Md.App. 626, 952 A.2d 357 (2008). In a scholarly opinion authored by Judge James R. Eyler, the court traced the history of Maryland legislation on this subject and, after "accepting the premise that [§ 3–515(a)] permits maintenance of a suit by the directors of a corporation after forfeiture of its charter," it emphasized that such a suit must be for the purposes of liquidation, and that the "directors do not become trustees for the purpose of continuing to operate the business." *Id.* at 634. The court refused to apply the powers conferred by § 3–515(a), noting that "there is no allegation that [the director-trustee] is winding up the affairs of the corporation. In fact, the record is to the contrary." *Id.* at 635. "In order for C.A. § 3–515 to apply, the facts must fit within it, and that is true whether the question is the initiation of a law suit or the maintenance of a law suit." *Id.* at 636.

In this case, however, section 3–515(c) is fully applicable because the facts do "fit." It cannot be controverted that Mintec was engaging in classic winding up and liquidating activities authorized by section 3–515(c), and the director-trustees were authorized to bring an action in the name of the corporation, which they did. Because the director-trustees had the authority to bring the action that they did in the name of the corporation, the filing of the creditor complaint to protect its few remaining as-

after expiration of one year from the completion of the work, as a result of which Judge Messitte correctly concluded that the right was forfeited, and not revived by the revival of the charter. His Opinion did not address the effect of § 3–515, nor was application of that section factually appropriate.

**189**

sets in liquidation was timely and effective.[5]

### Conclusion

While it is true that corporations in Maryland are subject to summary "execution" by the State, their death is a rather forgiving one from which resurrection may occur if the offending corporation atones for its sins. Without regard to whether a corporate resurrection ever occurs, however, an "executed" corporation in Maryland, unlike a human being, has the post mortem authority to "put its affairs in order" and, so long as it limits itself to legitimate winding up activities, its director-trustees may maintain an action in court in the name of the corporation.

Accordingly, the Court will, by separate Order, reverse the Memorandum Opinion and Order Treating Motion to Dismiss as a Motion for Summary Judgment and Granting the Same, and remand this case to the Bankruptcy Court for further proceedings in accordance with this Opinion.

### ORDER

Upon consideration of the briefs filed by the parties, the record on appeal, the arguments presented by counsel at a hearing held on May 19, 2008, and for the reasons stated in the accompanying Memorandum Opinion, it is this 10th day of July, 2008, by the United States District Court for the District of Maryland,

**ORDERED,** that the decision of the Bankruptcy Court is hereby **REVERSED;** and it is further

**ORDERED,** that the case is **REMANDED** to the Bankruptcy Court for further proceedings consistent with the Memorandum Opinion of this Court; and it is further

**ORDERED,** that the Clerk is directed to close the case.

---

**5.** Because the Court concludes that the bringing of the action in the name of the corporation was authorized by Maryland law and thus was timely, it is unnecessary to reach the question of revival of Mintec's charter and any possible retroactive effect that that might have on the timeliness of Mintec's complaint. However, because a winding up activity was authorized generally, either in the name of the director-trustees or in the name of the corporation, even if one were to assume that the corporation could not be the named plaintiff, the action would nevertheless be protected by Fed.R.Civ.P. 17, which precludes dismissal where a case has not been prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by the real party in interest. If such ratification occurs, it has the same effect as if the action had been commenced in the name of the real party in interest.